JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                    Plaintiff,

- against -

J. RONALD TERWILLIGER, WILLIAM C.
MACDONALD, JOSEPH S. TORG, CFP
RESIDENTIAL, L.P., AND TCF
RESIDENTIAL PARTNERSHIP, LTD.,

                    Defendants.

------------------------------

07 CIV 8497

Civil Case No.:

**COMPLAINT TO ENFORCE
COMPLETION GUARANTY**

Plaintiff The Prudential Insurance Company of America ("Prudential" or the "Lender"), in its Complaint against Defendants J. Ronald Terwilliger, William C. MacDonald, Joseph S. Torg, CFP Residential, L.P., and TCF Residential Partnership, Ltd., (each a "Guarantor" and collectively, the "Guarantors"), alleges and states as follows:

### INTRODUCTION

1.     This action arises out of the Guarantors' failure to perform certain guaranty obligations pursuant to a valid, binding and enforceable completion guaranty agreement (as more specifically defined herein, the "Completion Guaranty") made by the Guarantors for the benefit of Prudential. Prudential seeks to require the Guarantors to perform their obligations under the terms of the Completion Guaranty to deliver to Prudential a completed, lien-free condominium project located in the Charlestown Navy Yard in Boston, Massachusetts.

## PARTIES

2.      Plaintiff The Prudential Insurance Company of America is a New Jersey corporation with a principal place of business at 8 Campus Drive, Parsippany, New Jersey, 07054.

3.      Defendant J. Ronald Terwilliger, on information and belief, is a resident of Georgia with an address at 2859 Paces Ferry Road, Suite 1100, Atlanta, Georgia, 30339.

4.      Defendant William C. MacDonald, on information and belief, is a resident of Maryland with an address at 6110 Executive Blvd., Suite 315, Rockville, Maryland, 20852.

5.      Defendant Joseph S. Torg, on information and belief, is a resident of Connecticut with an address at 15 Old Danbury Road, Suite 100, Wilton, Connecticut, 06897.

6.      Defendant CFP Residential, L.P. is a Texas limited partnership with an address at 2100 McKinney Avenue, Suite 400, Houston, Texas, 77042.

7.      Defendant TCF Residential Partnership, Ltd. is a Texas limited partnership with an address at 2100 McKinney Avenue, Suite 400, Houston, Texas, 77042.

## JURISDICTION AND VENUE

8.      Jurisdiction over all claims herein is properly founded upon 28 U.S.C. §1332(a) in that, on information and belief, Prudential is a citizen of a different state from each Guarantor, and the amount in controversy herein exceeds the sum or value of $75,000, exclusive of interests and costs.

9. Personal jurisdiction over the Guarantors is based upon the Guarantors' presence and/or transaction of business in the State of New York.

10. This Court also has personal jurisdiction over the Guarantors, and venue is proper before this Court, by virtue of the forum selection clause contained in the Completion Guaranty, which provides:

> GUARANTORS AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS GUARANTY SHALL BE LITIGATED, AT LENDER'S SOLE DISCRETION AND ELECTION, ONLY IN COURTS HAVING A SITUS WITHIN THE COUNTY OF NEW YORK, NEW YORK. GUARANTORS HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SAID COUNTY AND STATE.

*See* Completion Guaranty at § 27, a true and correct copy of which is attached as Exhibit A hereto.

## FACTUAL ALLEGATIONS

*Construction Of The Navy Yard Condominium Project*

11. Navy Yard Four Associates LLC, a Delaware limited liability company (the "Owner"), owns a certain parcel of land located at First Street in the Boston Navy Yard in Boston, Massachusetts (the "Land").

12. Navy Yard Four Associates Limited Partnership (the "Borrower"), a Delaware limited partnership, is the sole member in the Owner and the owner of one hundred percent (100%) of the legal and beneficial interests in the Owner.

13. At the request of the Borrower, Prudential agreed to make a mezzanine loan (the "Mezzanine Loan") to the Borrower in the maximum principal amount of Eighteen Million Four

Hundred and Sixty-Six Thousand Dollars ($18,466,000) (the "Mezzanine Loan Amount") pursuant to a mezzanine loan agreement dated October 18, 2005 between the Borrower and Prudential (the "Mezzanine Loan Agreement"). A true and correct copy of the Mezzanine Loan Agreement is attached as <u>Exhibit B</u> hereto. The Mezzanine Loan is evidenced by a promissory note dated October 18, 2005 (the "Note"). A true and correct copy of the Note is attached as <u>Exhibit C</u> hereto.

14. The Borrower agreed to construct on the Land residential condominium units, retail space and parking (the "Project") using the proceeds from the Mezzanine Loan, and proceeds from a construction loan (the "Senior Loan") made pursuant to a construction loan agreement dated October 18, 2005 (the "Senior Loan Agreement") among the Owner, certain lenders identified in the Senior Loan Agreement and Eurohypo AG ("Eurohypo"), as administrative agent. The Senior Loan was secured by a mortgage on the Project and the Land (together, the "Mortgaged Premises").

*The Completion Guaranty*

15. As a condition precedent to Prudential making the Mezzanine Loan to the Borrower, Prudential required that the Guarantors enter into the Completion Guaranty. The Guarantors or their affiliates are or were the owners of direct or indirect interests in the Borrower, and the Guarantors represented in the Completion Guaranty that they would directly benefit from Prudential making the Loan to the Borrower. *See* Guaranty at Recitals, § E and § 4(a)(iv).

16. As part of the Completion Guaranty, the Guarantors unconditionally guaranteed payment and performance of certain Guaranteed Obligations of the Borrower:

> (a) Guarantors hereby irrevocably and unconditionally guarantee to Lender (and its successors and assigns), jointly and severally, the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable.
>
> (b) This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance, is joint and several and is not a guaranty of collection. This Guaranty may not be revoked by any Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Guarantor and after (if any Guarantor is a natural person) a Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantors to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.
>
> *Id.* at §§ 2(a) and (b).

17. Guaranteed Obligations, in turn, are defined as:

> the full, complete, and punctual observance, performance, and satisfaction of all of the obligations, duties, and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the Completion of the Improvements, including, without limitation, lien-free and within the time period established in the Loan Agreement for Completion, (b) the full and prompt payment of all amounts required to be deposited with Senior Lender or paid by Borrower or Owner to keep the Senior Loan "in balance" at all times prior to Completion, and (c) the full and prompt payment of any and all Losses incurred by Lender directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA.
>
> *Id.* at § 1.

18.   In the event that the Borrower fails to perform any of the Guaranteed Obligations, pursuant to the Completion Guaranty the Guarantors are immediately required to perform the Guaranteed Obligations:

> If all or any part of the Guaranteed Obligations shall not be punctually paid or performed when due, whether at maturity or earlier by acceleration or otherwise, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations and perform all Guaranteed Obligations. Such demands may be made at any time coincident with or after the time for payment or performance of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.
>
> *Id.* at § 2(d).

19.   The Guarantors agreed that in the event that they failed to fully discharge their obligations under the Completion Guaranty, Prudential shall be entitled to injunctive relief against them:

> Guarantors recognize that in the event Guarantors fail to perform, observe or discharge any of Guarantors' obligations hereunder, no remedy of Law will provide adequate relief to Lender, and agree that Lender shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.
>
> *Id.* at § 19.

20.   Pursuant to the Completion Guaranty, each Guarantor agreed to be jointly and severally liable for the Guaranteed Obligations. *Id.* at § 28. The Guarantors also agreed that Prudential can look to certain assets of each Guarantor to satisfy the obligations of that Guarantor (the "Available Assets"). *Id.* at § 32.

21.    The Guarantors also agreed to reimburse Prudential for reasonable attorneys' fees and costs incurred with enforcing the Guaranty. *Id.* at § 2(g). The Completion Guaranty is governed by the internal laws of the State of New York. *Id.* at § 14.

*Events of Default Under The Senior and Mezzanine Loan Agreements*

22.    In 2007, the condominium sales market in Boston began to soften and the Borrower experienced difficulty in attracting condominium buyers given the pricing schedule of the Project. Accordingly, in spring 2007, with condominium sales at the Project slow and the Project's completion date approaching, the Borrower began exploring the possibility of selling the Project as a for-rent project or through a bulk sale. Several prospective purchasers previously expressed interest in purchasing the Project, and the Borrower has retained a broker to solicit additional buyers, but no transaction has been consummated to date.

23.    In or about July 2007, the Owner (the borrower pursuant the Senior Loan Agreement) submitted a draw request to Eurohypo for funding under the Senior Loan. Eurohypo declined to fund the draw request and instead issued to the Owner a so-called "out of balance" notice, asserting that the Owner had failed to maintain levels of loan interest reserve as required under the Senior Loan Agreement. The failure to maintain the required interest reserves constituted Event of Defaults under both the Senior Loan and Mezzanine Loan Agreements.

24.    By letter dated August 10, 2007, Eurohypo notified the Owner of its failure to cure the existing Event of Default and subsequently accelerated all of the Owner's obligations under the Senior Loan Agreement. On or about September 27, 2007, Eurohypo delivered to the

Owner a notice of sale of the Mortgaged Premises. According to the notice of sale, the sale of the Mortgaged Premises has been scheduled for November 8, 2007.

25. In response to Eurohypo's July out of balance notice to the Owner, Prudential issued a letter dated August 13, 2007 (the "August 13 Notice") to the Borrower notifying the Borrower that an Event of Default had occurred. A true and correct copy of the August 13 Notice is attached as <u>Exhibit D</u> hereto. The Borrower failed to respond to the August 13 Notice.

26. On September 7, 2007, Prudential issued a notice of acceleration (the "September 7 Notice of Acceleration") to the Borrower, notifying the Borrower that:

> all principal, interest and other sums owed under the Loan Documents have been accelerated and are immediately due and payable.
>
> Nothing herein shall release, relinquish or impair any rights and remedies of Lender. If you fail to pay the entire amount due, Lender will be entitled to pursue all remedies available to it under the Loan Documents and at law or equity, including without limitation, under the Completion Guaranty.

A true and correct copy of the September 7 Notice of Acceleration is attached as <u>Exhibit E</u> hereto.

27. The Borrower has failed to respond to the September 7 Notice of Acceleration and has failed to pay all amounts due and perform its required obligations under the Mezzanine Loan Agreement.

28. The Project achieved a certificate of occupancy in August 2007. The Project, however, requires the completion of certain construction items (collectively, the "Punch List Items"), including without limitation, the repair or alteration of condominium balcony entrances that are purportedly not in compliance with Federal Housing Administration regulations.

29.  On September 7, 2007, Prudential issued a demand to the Guarantors under the Completion Guaranty to perform the Guaranteed Obligations (the "September 7 Completion Guaranty Demand Notice"), which stated in part:

> Accordingly, you are hereby notified that all principal, interest and other sums owed under the Loan Documents have been accelerated and are immediately due and payable. Lender hereby demands satisfaction of the Guaranteed Obligations (as defined in the Completion Guaranty), including, without limitation, (a) the full, complete, and punctual observance, performance, and satisfaction of all of the obligations, duties, and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the Completion of the Improvements, including, without limitation, lien-free and within the time period established in the Loan Agreement for Completion, (b) the full and prompt payment of all amounts required to be deposited with Senior Lender or paid by Borrower or Owner to keep the Senior Loan "in balance" at all times prior to Completion, and (c) the full and prompt payment of any and all Losses incurred by Lender directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA.
>
> Nothing herein shall release, relinquish or impair any rights and remedies of Lender. If you fail to pay the entire amount due, Lender will be entitled to pursue all remedies available to it under the Loan Documents and at law or equity.

A true and correct copy of the September 7 Completion Guaranty Demand Notice is attached as <u>Exhibit F</u> hereto.

30.  The Guarantors have failed to respond to the September 7 Completion Guaranty Demand Notice and have failed to perform the Guaranteed Obligations.

*The Turner Construction Lien On The Project*

31.  Turner Construction Company ("Turner") was the construction manager for the Project pursuant to an agreement with the Borrower. On information and belief, Turner and the Borrower and/or the Owner were involved in a dispute concerning amounts allegedly due to

Turner for Turner's work on the Project. On further information and belief, on October 4, 2006, Turner filed a notice of contract establishing a mechanic's lien on the Project.

32.  Subsequently, on or about August 31, 2007, Turner filed a complaint in Suffolk Superior Court in Boston, Massachusetts, against the Borrower, the Owner, Eurohypo, Prudential and other entities seeking payment of $10,134,993, plus treble damages, attorneys' fees and costs. Turner also asserted that the filing of the complaint perfected Turner's lien on the Project. A true and correct copy of the Turner complaint is attached as Exhibit G hereto.

33.  On information and belief, there exist additional liens on the Project. These liens, together with the purported Turner lien, are collectively referred to as the "Liens."

*The Guarantors' Obligations Under The Completion Guaranty*

34.  Given the September 7 Notice of Acceleration, all obligations of the Borrower under the Mezzanine Loan Agreement are due. Pursuant to the Completion Guaranty, and as required by the September 7 Completion Guaranty Demand Notice, the Guarantors were required immediately to complete the Project and deliver the Project lien-free. The Guarantors' failure to complete the Project, as evidenced, without limitation, by their failure to complete the Punch List Items and to remove the Liens on the Project, constitutes a breach of their obligations under the Completion Guaranty.

## COUNT I
### Claim For Specific Performance on the Completion Guaranty

35.  Prudential realleges paragraphs 1 through 34.

36. The Completion Guaranty is valid, binding, and enforceable against the Guarantors.

37. Any and all conditions precedent to the Guarantors' obligations under the Completion Guaranty have been satisfied.

38. Pursuant to the Completion Guaranty, the Guarantors are required to perform all Guaranteed Obligations of the Borrower.

39. The Guarantors have wrongfully refused to perform the Guaranteed Obligations, including without limitation, failing to complete the Punch List Items and remove the Liens from the Project.

40. Prudential now seeks an order requiring the Guarantors to perform the Guaranteed Obligations, including without limitation, completing the Punch List Items and removing the Liens from the Project.

### COUNT II
**Claim on the Completion Guaranty**
**Collection Costs**

41. Prudential realleges paragraphs 1 through 40.

42. The Completion Guaranty is valid, binding, and enforceable against the Guarantors.

43. Any and all conditions precedent to the Guarantors' obligations under the Completion Guaranty have been satisfied.

44.  Pursuant to the Completion Guaranty, the Guarantors agreed to pay reasonable attorneys' fees and costs incurred with enforcing the Guaranty.

## COUNT III
### Claim on the Guaranty
### The Guarantors' Continuing Obligations Under The Completion Guaranty

45.  Prudential realleges paragraphs 1 through 44.

46.  The Completion Guaranty is valid, binding, and enforceable against the Guarantors.

47.  Any and all conditions precedent to the Guarantors' obligations under the Completion Guaranty have been satisfied.

48.  The Borrower, by virtue of its defaults under the Senior Loan and Mezzanine Loan Agreements, may fail to perform other Guaranteed Obligations.

49.  Pursuant to the Completion Guaranty, the Guarantors are required to perform any other Guaranteed Obligations of the Borrower.

WHEREFORE, Prudential respectfully requests that this Court order that (i) the Guarantors to perform the Guaranteed Obligations, including without limitation, completing the Punch List Items and removing the Liens from the Project, and (ii) no Guarantor sell, transfer, pledge, encumber, mortgage or otherwise dissipate any Available Assets absent this Court's order permitting same; and award reasonable attorneys' fees and costs incurred by Prudential in enforcing the Guaranty against the Guarantors and any other and further relief as this Court deems just.

Dated: New York, New York
       October 1, 2007

GOODWIN PROCTER LLP

_____
Christopher J. Garvey (CG 3323)
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

-and-

Anthony M. Feeherry
Brian H. Mukherjee
Exchange Place
Boston, Massachusetts 02109
(617) 570-1000

LIBA/1833275.4