EXHIBIT C

## PROMISSORY NOTE

$18,466,000                                                October 1̲8̲, 2005

    1. **Promise to Pay.** FOR VALUE RECEIVED, Navy Yard Four Associates Limited Partnership, a Delaware limited partnership ("**Maker**"), promises to pay to the order of THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation (together with its successors and assigns, "**Holder**"), at its office for service of notices set forth below or such other location as Holder may specify in a notice to Maker from time to time, the maximum principal sum of EIGHTEEN MILLION FOUR HUNDRED SIXTY SIX THOUSAND AND NO 100THS DOLLARS ($18,466,000) (or so much thereof as may from time to time be outstanding), together with all other amounts added thereto pursuant to this Promissory Note (collectively, with any amendments hereto, substitutions herefor, and modifications, renewals, and extensions hereof, this "**Note**") or otherwise payable to Holder under that certain Loan Agreement, dated as of the date hereof, executed by Maker and Holder (collectively with any amendments thereto, substitutions therefor, and modifications, renewals, and extensions thereof, the "**Loan Agreement**"), and the other Loan Documents (as defined in the Loan Agreement), including, without limitation, the "Extension Fee", and "Base Accrued Interest", together with interest thereon as hereinafter set forth (collectively, the "**Loan**"). Any initially capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Loan Agreement.

    2. **Defined Terms.** The following terms as used herein shall have the following meanings:

    "**Base Accrued Interest**" shall have the meaning ascribed to such term in Section 4 of this Note.

    "**Base Interest**" shall have the meaning ascribed to such term in Section 3 of this Note.

    "**Base Interest Rate**" shall mean a rate *per annum* equal to sixteen percent (16%), compounded monthly.

    "**Base Interest Default Rate**" shall mean a rate *per annum* equal to the Base Interest Rate plus four percent (4%).

    "**Event of Default**" shall have the meaning ascribed to such term in Section 8 of this Note.

    "**Excess Interest**" shall have the meaning ascribed to such term in Section 13 of this Note.

    "**Exit Fee**" shall have the meaning ascribed to such term in Section 4 of this Note.

"**Late Charge**" shall mean an amount equal to four percent (4%) of any delinquent payment excluding principal at the maturity of the Loan.

"**Maturity Date**" shall mean October 18, 2008 subject to extension as provided in this Note and as more particularly set forth in the Loan Agreement, or as such date may be accelerated in accordance with the terms of the Loan Documents.

"**Mezzanine Principal Balance**" shall mean the entire outstanding principal balance of the Loan.

Defined terms may be used in the singular or the plural. When used in the singular preceded by "a", "an", or "any", such term shall be taken to indicate one or more members of the relevant class. When used in the plural, such term shall be taken to indicate all members of the relevant class.

3. **Mezzanine Principal Balance and Interest.** So long as no Event of Default exists, interest shall accrue on the Mezzanine Principal Balance from time to time outstanding at a rate equal to the Base Interest Rate ("**Base Interest**"). Interest at the Base Interest Rate shall be calculated based on a 360 day year and charged for the actual number of days elapsed.

4. **Payments.** Notwithstanding the amount of Base Interest accrued hereunder, Maker shall not be required to pay Base Interest on a current basis except as required under Section 2.6 of the Loan Agreement. Each such payment of interest due shall be made on the first (1st) day of each month. All accrued unpaid interest at the Base Interest Rate shall constitute "**Base Accrued Interest**" and shall be added to the Mezzanine Principal Balance of the Loan on the first (1st) day of each month and shall bear interest at the Base Interest Rate. If not sooner paid, all Base Accrued Interest shall be due and payable at such time as the Loan is repaid or is otherwise due and payable. Base Accrued Interest shall be paid in the priority set forth in Section 2.6 of the Loan Agreement.

5. **Exit Fee.** Borrower shall pay to Lender an exit fee (the "**Exit Fee**") in the amount of $184,660, on the date the last principal payment under the Loan is paid for whatever reason (but no later than the Maturity Date).

6. **Term.** This Note, if not sooner paid, shall be paid in full on the sooner to occur of (a) the Maturity Date, and (b) such date, if any, as Maker or Owner shall refinance all or any portion of the Senior Loan, which refinancing shall not be deemed to include repayment of the Senior Loan out of proceeds pursuant to Section 2.10 of the Loan Agreement. The Maturity Date may be extended in accordance with the terms of Section 2.4 of the Loan Agreement upon satisfaction of the Extension Conditions (as defined therein).

7. **Prepayment.** Except as expressly set forth in Section 2.8 of the Loan Agreement, no prepayment of this Note shall be permitted.

8. **Events of Default.** Any of the following shall constitute an "**Event of Default**" under this Note:

(a) Failure of Maker to repay principal under this Note when due; or

(b)  Failure of Maker to pay, within five (5) days of the due date, any of the Indebtedness (except for repayment of principal) or a failure by Maker to observe or perform any obligation, covenant, condition, or agreement herein to be performed by Maker which involves the payment of money (i) to Lender within five (5) days following the due date and (ii) to any other Person, within five (5) days following notice thereof to Borrower; or

(c)  Failure of Maker to comply with the other terms of this Note which is not cured within thirty (30) days after written notice thereof to Borrower from Lender; provided, however, if such breach cannot by its nature be cured within thirty (30) days, and Borrower has commenced such cure within such thirty (30) day period and, thereafter, diligently pursues the curing thereof (and then in all events cures such failure within ninety (90) days after the original notice thereof), Borrower shall not be in default hereunder; or

(d)  Breach of any covenant, representation, or warranty in any other Loan Document and the expiration of any cure period applicable thereto or, if no cure period is specified, which is not cured within thirty (30) days after written notice thereof to Borrower from Lender; provided, however, if such breach cannot by its nature be cured within thirty (30) days, and Borrower has commenced such cure within such thirty (30) day period and, thereafter, diligently pursues the curing thereof (and then in all events cures such failure within ninety (90) days after the original notice thereof), Borrower shall not be in default hereunder.

9.  **Remedies.**  Following the occurrence of an Event of Default, and, with respect to clause (a), for so long as such Event of Default remains outstanding: (a) interest shall accrue and be payable on the Mezzanine Principal Balance at the Base Interest Default Rate; (b) Holder may, at its option and without notice (such notice being expressly waived), declare this Note immediately due and payable; and (c) Holder may pursue all rights and remedies available under the Loan Agreement or any of the other Loan Documents. Holder's rights, remedies and powers, as provided in this Note and the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any guarantor of the Loan, the security described in the Loan Documents, and any other security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to exercise its option to accelerate the Maturity Date shall not constitute a waiver of the right to exercise the same at any time during the continued existence of any Event of Default or any subsequent Event of Default.

10. **Late Charge.**  If payments of principal, interest due under this Note, or any other amounts due under any of the other Loan Documents are not timely made and remain overdue for a period of five (5) days, Maker, without notice or demand by Holder, promptly shall pay a Late Charge with respect to such delinquent payment. The parties hereby recognize that the Late Charge is a reasonable approximation of an actual loss difficult to estimate. Holder's failure to collect such Late Charge shall not constitute a waiver of Holder's right to require such payment

for past or future defaults. The Late Charge shall be in addition to all other rights and remedies available to Holder upon the occurrence of a default under the Loan Documents.

11. **Waiver.** Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and, except as otherwise provided in the Loan Documents, all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties and their legal representatives, successors and assigns, of this Note, and their legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

12. **Security; Method and Application of Payments.** This Note is secured by the liens, encumbrances and obligations created by this Note, the Pledge Agreement and the other Loan Documents and the terms and provisions of the other Loan Documents are hereby incorporated herein. All payments of principal, interest, Late Charge, Prepayment Premium, if any, and other amounts due under this Note shall be paid to Holder by attorneys' trust account check (which funds must clear to be deemed paid) or by wire transfer of immediately available funds to such bank or place, and in such other manner, as Holder may from time to time designate. All payments shall be made in immediately available funds not later than 2:00 pm (Eastern time) on the day when due in lawful money of the United States. Payments will be applied, at Holder's option, first to any Costs Maker is obligated to pay under this Note or the other Loan Documents, second to interest due on this Note as provided in the Loan Agreement, and third to the outstanding principal balance of this Note.

13. **Lawful Rate of Interest.** In no event whatsoever shall the amount of interest paid or agreed to be paid to Holder pursuant to this Note or any of the Loan Documents exceed the highest lawful rate of interest permissible under applicable Law. If, from any circumstances whatsoever, fulfillment of any provision of this Note and the other Loan Documents shall involve exceeding the lawful rate of interest which a court of competent jurisdiction may deem applicable hereto ("**Excess Interest**"), then *ipso facto*, the obligation to be fulfilled shall be reduced to the highest lawful rate of interest permissible under such Law and if, for any reason whatsoever, Holder shall receive, as interest, an amount which would be deemed unlawful under such applicable Law, such interest shall be applied to the Loan (whether or not due and payable), and not to the payment of interest, or refunded to Maker if such Loan has been paid in full. Neither Maker nor any guarantor, endorser or surety nor their heirs, legal representatives,

successors or assigns shall have any action against Holder for any damages whatsoever arising out of the payment or collection of any such Excess Interest.

14. **Payment of Taxes and Fees.** Maker agrees to pay the cost of any revenue, tax or other documentary fee or stamps now or hereafter required by Law to be affixed to this Note or any of the other Loan Documents.

15. **Sale of Loan.** Holder, at any time and without the consent of Maker, may grant participations in, or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the Loan, this Note, the Pledge Agreement, and the other Loan Documents, and any collateral given to secure the Loan.

16. **Notices.** Notices shall be given under this Note in conformity with the terms and conditions of the Loan Agreement.

17. **Waiver of Statute of Limitations.** Maker hereby waives the right to assert any statute of limitations as a bar to any action brought to enforce this Note or any other obligation under any of the Loan Documents.

18. **Forbearance by Holder Not a Waiver.** Any forbearance by Holder in exercising any right or remedy under this Note or any of the other Loan Documents, or otherwise afforded by applicable Law, shall not be a waiver of or preclude the exercise of any right or remedy. Holder's acceptance of payment of any sum secured by any of the Loan Documents after the due date of such payment shall not be a waiver of Holder's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. With respect to all Loan Documents, only waivers made in writing by Holder shall be effective against Holder.

19. **Governing Law; Severability.** This Note shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of laws. The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

20. **No Waiver; Cumulative Remedies.** No waiver of any breach or default hereunder shall constitute or be construed as a waiver by Holder of any subsequent breach or default or of any breach or default of any other provision of this Note. Except to the extent that Holder has specifically and expressly waived such remedies in this Note or otherwise, the rights and remedies hereunder and under any of the other Loan Documents provided are cumulative and may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by Law. Holder may resort to and realize on the Collateral simultaneously with any acts or proceedings initiated by Holder in its sole and conclusive discretion to resort to or realize upon any other sources of repayment of the Indebtedness, including, but not limited to, collateral granted by security agreements and the personal liability of Maker and any Person which has guaranteed repayment of the Indebtedness.

21. **Successors and Assigns; Agents.** The covenants and agreements contained in this Note and all obligations of Maker hereunder shall be binding upon the successors and assigns of

Maker, except that Maker shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Holder. The covenants and agreements contained in this Note and all obligations of Maker hereunder, together with the rights and remedies of Holder hereunder, shall inure to the benefit of Holder and its respective successors and assigns. In exercising any rights under the Loan Documents or taking any actions provided for therein, Holder may act through its employees, agents or independent contractors as authorized by Holder. Neither this Note nor anything set forth herein is intended to, nor shall it, confer any rights on any Person other than the parties hereto and all third party rights are expressly negated.

22. **Headings.** The captions and headings of the sections and paragraphs of this Note are for convenience only and are not to be used to interpret or define the provisions hereof.

23. **Time of Essence.** Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

24. **Jury Trial Waiver.** MAKER AND HOLDER, BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER, AND MAKER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MAKER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. MAKER AND HOLDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

25. **Venue.** MAKER AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS NOTE SHALL BE LITIGATED, AT HOLDER'S SOLE DISCRETION AND ELECTION, ONLY IN COURTS HAVING A SITUS WITHIN THE COUNTY OF NEW YORK, NEW YORK. MAKER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SAID COUNTY AND STATE.

26. **Exculpation.** The provisions of Article 9 of the Loan Agreement are hereby incorporated herein by this reference.

27. **Intercreditor Agreement.** This Note and the other Loan Documents are subject to an Intercreditor Agreement, bearing even date herewith, between Holder, as the "Mezzanine Lender," and Eurohypo AG, New York Branch, as the "Senior Lender." By its acceptance of

this instrument, any holder hereof agrees to be bound by the provisions of such Intercreditor Agreement to the same extent that Holder is bound.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

IN WITNESS WHEREOF, Maker has executed this Note or has caused the same to be executed by its duly authorized representatives as of the date first set forth above.

        Navy Yard Four Associates Limited Partnership, a Delaware limited partnership

        By:   TCR Navy Yard Four Limited Partnership, its general partner

                By:   TCR Northeast Condominiums, Inc., Its general partner

                By: _____
                      Name: Joseph S. Tong
                      Title: Vice President

LIBD/1687540.6