UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                    Plaintiff,

- against -

J. RONALD TERWILLIGER, WILLIAM C.
MACDONALD, JOSEPH S. TORG, AND CFP
RESIDENTIAL, L.P.

                    Defendants.

Civil Case No.: 07cv8497 (DAB)

**AMENDED COMPLAINT TO
ENFORCE LOAN GUARANTIES**

---

      Plaintiff The Prudential Insurance Company of America ("Prudential" or the "Lender"), in its Complaint against Defendants J. Ronald Terwilliger, William C. MacDonald, Joseph S. Torg, and CFP Residential, L.P. (each a "Guarantor" and collectively, the "Guarantors"), alleges and states as follows:

## INTRODUCTION

      1.     This action arises out of the Guarantors' failure to perform certain guaranty obligations pursuant to valid, binding and enforceable guaranty agreements (as more specifically defined herein, the "Carveout Guaranty" and the "Completion Guaranty," and collectively the "Guaranties") made by the Guarantors for the benefit of Prudential. Prudential seeks to require the Guarantors to perform their obligations under the terms of the Guaranties to *inter alia* (i) pay all amounts owing on a mezzanine loan made by Prudential to Navy Yard Four Associates Limited Partnership (the "Borrower"), (ii) deliver to Prudential Borrower's completed, lien-free condominium project located in the Charlestown Navy Yard in Boston, Massachusetts and (iii)

make all payments required to keep the condominium project's senior construction loan "in balance." As more fully described herein, the Guarantors have consented to the entry of injunctive relief in favor of Prudential to enforce the Guarantors' various obligations under the Guaranties.

## PARTIES

2. Plaintiff The Prudential Insurance Company of America is a New Jersey corporation with a principal place of business at 8 Campus Drive, Parsippany, New Jersey, 07054.

3. Defendant J. Ronald Terwilliger, on information and belief, is a resident of Georgia with an address at Two Buckhead Plaza, 3050 Peachtree Road NW, Suite 500, Atlanta, Georgia, 30305.

4. Defendant William C. MacDonald, on information and belief, is a resident of Maryland with an address at 6110 Executive Blvd., Suite 315, Rockville, Maryland, 20852.

5. Defendant Joseph S. Torg, on information and belief, is a resident of Connecticut with an address at 15 Old Danbury Road, Suite 100, Wilton, Connecticut, 06897.

6. Defendant CFP Residential, L.P. is a Texas limited partnership with an address at 2100 McKinney Avenue, Suite 400, Dallas, Texas, 77042.

## JURISDICTION AND VENUE

7.    Jurisdiction over all claims herein is properly founded upon 28 U.S.C. §1332(a) in that, on information and belief, Prudential is a citizen of a different state from each Guarantor, and the amount in controversy herein exceeds the sum or value of $75,000, exclusive of interests and costs.

8.    Personal jurisdiction over the Guarantors is based upon the Guarantors' presence and/or transaction of business in the State of New York.

9.    This Court also has personal jurisdiction over the Guarantors, and venue is proper before this Court, by virtue of the forum selection clauses contained in both Guaranties, which provide in identical part:

> GUARANTORS AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS GUARANTY SHALL BE LITIGATED, AT LENDER'S SOLE DISCRETION AND ELECTION, ONLY IN COURTS HAVING A SITUS WITHIN THE COUNTY OF NEW YORK, NEW YORK. GUARANTORS HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SAID COUNTY AND STATE.
>
> *See* Carveout Guaranty at § 27, a true and correct copy of which is attached as <u>Exhibit A</u> hereto and Completion Guaranty at § 27, a true and correct copy of which is attached as <u>Exhibit B</u> hereto.

## FACTUAL ALLEGATIONS

*Construction Of The Navy Yard Condominium Project*

10. Navy Yard Four Associates LLC, a Delaware limited liability company (the "Owner"), owns a certain parcel of land located at First Street in the Boston Navy Yard in Boston, Massachusetts (the "Land").

11. The Borrower, a Delaware limited partnership, is the sole member in the Owner and the owner of one hundred percent (100%) of the legal and beneficial interests in the Owner.

12. At the request of the Borrower, Prudential, on behalf of the Western Conference of Teamsters, agreed to make a mezzanine loan (the "Mezzanine Loan") to the Borrower in the maximum principal amount of Eighteen Million Four Hundred and Sixty-Six Thousand Dollars ($18,466,000) (the "Mezzanine Loan Amount") pursuant to a mezzanine loan agreement dated October 18, 2005 between the Borrower and Prudential (the "Mezzanine Loan Agreement"). A true and correct copy of the Mezzanine Loan Agreement is attached as Exhibit C hereto. The Mezzanine Loan is evidenced by a promissory note dated October 18, 2005 (the "Note"). A true and correct copy of the Note is attached as Exhibit D hereto.

13. The Borrower agreed to construct on the Land residential condominium units, retail space and parking (the "Project") using the proceeds from the Mezzanine Loan, and proceeds from a construction loan (the "Senior Loan") made pursuant to a construction loan agreement dated October 18, 2005 (the "Senior Loan Agreement") among the Owner, certain lenders identified in the Senior Loan Agreement and Eurohypo AG ("Eurohypo"), as administrative agent. The Senior Loan was secured by a mortgage on the Project and the Land (together, the "Mortgaged Premises").

*The Carveout Guaranty*

14.   As a condition precedent to Prudential making the Mezzanine Loan to the Borrower, Prudential required that the Guarantors enter into the Carveout Guaranty. TCF Residential, L.P. ("TCF Residential") was also a party to the Carveout Guaranty. The Guarantors or their affiliates are or were the owners of direct or indirect interests in the Borrower, and the Guarantors represented in the Carveout Guaranty that they would directly benefit from Prudential making the Loan to the Borrower. *See* Carveout Guaranty at Recitals, § E and § 4(d).

15.   As part of the Carveout Guaranty, the Guarantors unconditionally guaranteed payment and performance of the Guaranteed Obligations of the Borrower:

> (a)  Guarantors hereby irrevocably and unconditionally guarantee to Lender (and its successors and assigns), jointly and severally, the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable.
>
> (b)  This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance, is joint and several and is not a guaranty of collection. This Guaranty may not be revoked by any Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Guarantor and after (if any Guarantor is a natural person) a Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantors to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.
>
> Carveout Guaranty at §§ 2(a) and (b).

16. Under the Carveout Guaranty, "Guaranteed Obligations" are defined as *inter alia* "the full and prompt payment of all obligations of Borrower under the Loan Documents in the event of a Recourse Event." *Id.* at § 1. "Recourse Event" is defined in part as the occurrence of any default under or any violation of any of the terms and provision of Section 5.23 (No Additional Liens or Encumbrances) of the Loan Agreement." *Id.* Section 5.23 of the Mezzanine Loan Agreement, in turn, provides that neither the Borrower nor the Guarantors will permit the filing of any liens or encumbrances (except those created by the Senior Loan Agreement or specifically noted in the Mezzanine Loan Agreement). *See* Mezzanine Loan Agreement at § 5.23. As discussed *infra*, the Borrower and the Guarantors have allowed unpermitted liens to be placed and maintained on the Project, including a purported mechanic's lien filed by Turner Construction Company ("Turner"), thereby breaching the terms of the Mezzanine Loan Agreement and the Carveout Guaranty.

17. In the event that the Borrower fails to pay the amounts of any of the Guaranteed Obligations, pursuant to the Carveout Guaranty the Guarantors are immediately required to pay the amount of such Guaranteed Obligations:

> If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at maturity or earlier by acceleration or otherwise, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations. Such demands may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.
>
> Carveout Guaranty at § 2(d).

*The Completion Guaranty*

18.    As an additional condition precedent to Prudential making the Mezzanine Loan to the Borrower, Prudential required that the Guarantors also enter into the Completion Guaranty. TCF Residential was also a party to the Completion Guaranty. As in the Carveout Guaranty, the Guarantors represented in the Completion Guaranty that they would directly benefit from Prudential making the Loan to the Borrower. *See* Completion Guaranty at Recitals, § E and § 4(a)(iv).

19.    As part of the Completion Guaranty, the Guarantors unconditionally guaranteed payment and performance of certain Guaranteed Obligations of the Borrower, in addition to the Guaranteed Obligations set forth in the Carveout Guaranty:

> (a)    Guarantors hereby irrevocably and unconditionally guarantee to Lender (and its successors and assigns), jointly and severally, the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable.
>
> (b)    This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance, is joint and several and is not a guaranty of collection. This Guaranty may not be revoked by any Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Guarantor and after (if any Guarantor is a natural person) a Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantors to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.
>
> *Id.* at §§ 2(a) and (b).

20.    "Guaranteed Obligations" under the Completion Guaranty, in turn, are defined as:

the full, complete, and punctual observance, performance, and satisfaction of all of the obligations, duties, and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the Completion of the Improvements, including, without limitation, lien-free and within the time period established in the Loan Agreement for Completion, (b) the full and prompt payment of all amounts required to be deposited with Senior Lender or paid by Borrower or Owner to keep the Senior Loan "in balance" at all times prior to Completion, and (c) the full and prompt payment of any and all Losses incurred by Lender directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA.

*Id.* at § 1.

21. As under the Carveout Guaranty, in the event that the Borrower fails to perform any of the Guaranteed Obligations, pursuant to the Completion Guaranty the Guarantors are immediately required to perform the Guaranteed Obligations:

> If all or any part of the Guaranteed Obligations shall not be punctually paid or performed when due, whether at maturity or earlier by acceleration or otherwise, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations and perform all Guaranteed Obligations. Such demands may be made at any time coincident with or after the time for payment or performance of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

*Id.* at § 2(d).

As discussed *infra*, the Borrower and the Guarantors have failed to perform the Guaranteed Obligations, including but not limited to, (i) the immediate completion and delivery of the Project lien-free, including removing the Turner lien, (ii) making the necessary payments to keep the Senior Loan "in balance", and (iii) paying all losses incurred by Prudential concerning the Project's non-compliance with the Americans with Disability Act (the "ADA").

The Guarantors failure to perform such obligations is a breach of the terms of the Mezzanine Loan Agreement and the Completion Guaranty.

*Guarantors' Express Consent To Injunctive Relief Under The Guaranties*

22. The Guarantors expressly agreed that in the event that they failed to fully discharge their obligations under either the Carveout Guaranty or the Completion Guaranty, Prudential shall be entitled to injunctive relief against them:

> Guarantors recognize that in the event Guarantors fail to perform, observe or discharge any of Guarantors' obligations hereunder, no remedy of Law will provide adequate relief to Lender, and agree that Lender shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

*See* Carveout Guaranty at § 19; Completion Guaranty at § 19.

23. Additionally, pursuant to the Completion Guaranties, each Guarantor agreed to be jointly and severally liable for the Guaranteed Obligations. Carveout Guaranty at § 28; Completion Guaranty at § 28.

24. The Guarantors also agreed to reimburse Prudential for reasonable attorneys' fees and costs incurred with enforcing the Guaranty. Carveout Guaranty at § 2(g); Completion Guaranty at § 2(g). The Guaranties governed by the internal laws of the State of New York. Carveout Guaranty at § 14; Completion Guaranty at § 14.

25. Section 16 of the Guaranties further provided that "no Guarantor shall have the right to assign its rights hereunder or any interest herein without the prior written consent of Lender." Carveout Guaranty at § 16; Completion Guaranty at § 16.

*Guarantors' Available Assets*

26. Pursuant to the Guaranties, the Guarantors also agreed that Prudential can look to certain assets of each Guarantor to satisfy the obligations of that Guarantor (the "Available Assets"). Carveout Guaranty at § 32; Completion Guaranty at § 32.

The Available Assets are defined as:

(i) the interests of such Guarantor in any entity that is, at the time of enforcement of this Guaranty, (x) engaged in the business of holding, constructing, developing or providing property management or overhead services for real estate designed for residential use in the United States of America and (y) affiliated with Trammell Crow Residential Company, or any subsidiary thereof or any successor or assign of all or substantially all of the assets thereof; and

(ii) any receivable due such Guarantor from any entity described in paragraph (i) above.

Carveout Guaranty at § 32; Completion Guaranty at § 32.

27. In order for Prudential to ensure that each Guarantor maintained sufficient Available Assets to satisfy the Guarantor's Guaranteed Obligations, each Guarantor expressly agreed to provide to Prudential on an annual basis financial statements reflecting each Guarantor's Available Assets:

Each Guarantor shall furnish or cause to be furnished to Lender annually, on or before December 31 of each year, a copy of the Estimated Collateral Value Statement prepared for such Guarantor as of the preceding June 30. Each such Estimated Collateral Value Statement will be in substantially the same form, and be prepared on substantially the same basis, as the Estimated Collateral Value Statement, dated as of June 3, 2004, prepared for the Guarantor.

Carveout Guaranty at § 5; Completion Guaranty at § 5.

*Events of Default Under The Senior and Mezzanine Loan Agreements*

28. In 2007, the Borrower experienced difficulty in attracting condominium buyers given the pricing schedule of the Project. Accordingly, in spring 2007, with condominium sales

10

at the Project slow and the Project's completion date approaching, the Borrower began exploring the possibility of selling the Project as a for-rent project or through a bulk sale. Several prospective purchasers previously expressed interest in purchasing the Project, and the Borrower has retained a broker to solicit additional buyers, but no transaction has been consummated to date.

29.     In or about July 2007, the Owner (the borrower pursuant the Senior Loan Agreement) submitted a draw request to Eurohypo for funding under the Senior Loan. Eurohypo declined to fund the draw request and instead issued to the Owner a so-called "out of balance" notice, asserting that the Owner had failed to maintain levels of loan interest reserve as required under the Senior Loan Agreement. The failure to maintain the required interest reserves constituted Event of Defaults under both the Senior Loan and Mezzanine Loan Agreements.

30.     By letter dated August 10, 2007, Eurohypo notified the Owner of its failure to cure the existing Event of Default and subsequently accelerated all of the Owner's obligations under the Senior Loan Agreement. On or about September 27, 2007, Eurohypo delivered to the Owner a notice of sale of the Mortgaged Premises. According to the notice of sale, the sale of the Mortgaged Premises has been scheduled for November 8, 2007.

31.     In response to Eurohypo's July out of balance notice to the Owner, Prudential issued a letter dated August 13, 2007 (the "August 13 Notice") to the Borrower notifying the Borrower that an Event of Default had occurred. A true and correct copy of the August 13 Notice is attached as <u>Exhibit E</u> hereto. The Borrower failed to respond to the August 13 Notice. The Borrower also failed to pay certain environmental and construction consulting fees and

expenses as required by the Mezzanine Loan Documents and which were incurred by Prudential in connection with the Project.

32.     On September 7, 2007, Prudential issued a notice of acceleration (the "September 7 Notice of Acceleration") to the Borrower, notifying the Borrower that:

> all principal, interest and other sums owed under the Loan Documents have been accelerated and are immediately due and payable.
>
> Nothing herein shall release, relinquish or impair any rights and remedies of Lender. If you fail to pay the entire amount due, Lender will be entitled to pursue all remedies available to it under the Loan Documents and at law or equity, including without limitation, under the Completion Guaranty.

A true and correct copy of the September 7 Notice of Acceleration is attached as Exhibit F hereto.

33.     The Borrower has failed to respond to the September 7 Notice of Acceleration and has failed to pay all amounts due and perform its required obligations under the Mezzanine Loan Agreement.

34.     The Project achieved a certificate of occupancy in August 2007. The Project, however, requires the completion of certain construction items (collectively, the "Punch List Items"), including without limitation, the repair or alteration of condominium balcony entrances that are purportedly not in compliance with Federal Housing Administration regulations.

*Demand Notices to the Guarantors*

35.     On September 7, 2007, Prudential issued a demand to the Guarantors under the Completion Guaranty to perform the Guaranteed Obligations (the "September 7 Completion Guaranty Demand Notice"), which stated in part:

Accordingly, you are hereby notified that all principal, interest and other sums owed under the Loan Documents have been accelerated and are immediately due and payable. Lender hereby demands satisfaction of the Guaranteed Obligations (as defined in the Completion Guaranty), including, without limitation, (a) the full, complete, and punctual observance, performance, and satisfaction of all of the obligations, duties, and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the Completion of the Improvements, including, without limitation, lien-free and within the time period established in the Loan Agreement for Completion, (b) the full and prompt payment of all amounts required to be deposited with Senior Lender or paid by Borrower or Owner to keep the Senior Loan "in balance" at all times prior to Completion, and (c) the full and prompt payment of any and all Losses incurred by Lender directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA.

Nothing herein shall release, relinquish or impair any rights and remedies of Lender. If you fail to pay the entire amount due, Lender will be entitled to pursue all remedies available to it under the Loan Documents and at law or equity.

A true and correct copy of the September 7 Completion Guaranty Demand Notice is attached as <u>Exhibit G</u> hereto.

36. On information and belief, on or about December 28, 2005, Guarantor TCF Residential was merged into Guarantor CFP Residential, L.P. ("CFP Residential") and no longer has a separate corporate existence. The purported merger of TCF Residential into CFP Residential is in direct violation of the terms of the Guaranties, which expressly require Prudential's prior written consent to this type of transaction. Carveout Guaranty at § 16; Completion Guaranty at § 16. TCF Residential never sought Prudential's permission to merge into CFP Residential.

37. The Guarantors have failed to respond to the September 7 Completion Guaranty Demand Notice and have failed to perform the Guaranteed Obligations under the Completion Guaranty.

38. On or about October 10, 2007, Prudential issued a demand to the Guarantors under the Carveout Guaranty to perform the Guaranteed Obligations (the "October 10 Carveout Guaranty Demand Notice"), which stated in part:

> You are hereby notified that Lender demands immediate satisfaction of the Guaranteed Obligations (as defined in the Carveout Guaranty), including, without limitation, the full and prompt payment of all obligations of Borrower under the Loan Documents. Nothing herein shall release, relinquish or impair any rights and remedies of Lender. If you fail to pay the entire amount due, Lender will be entitled to pursue all remedies available to it under the Loan Documents and at law or equity.

A true and correct copy of the October 10 Carveout Guaranty Demand Notice is attached as Exhibit H hereto.

39. The Guarantors have failed to respond to the October 10 Carveout Guaranty Demand Notice and have failed to pay the amount of the Guaranteed Obligations under the Carveout Guaranty.

*The Turner Construction Lien On The Project*

40. Turner was the construction manager for the Project pursuant to an agreement with the Borrower. On information and belief, Turner and the Borrower and/or the Owner were involved in a dispute concerning amounts allegedly due to Turner for Turner's work on the Project. On further information and belief, on October 4, 2006, Turner filed a notice of contract establishing a mechanic's lien on the Project.

41. Subsequently, on or about August 31, 2007, Turner filed a complaint in Suffolk Superior Court in Boston, Massachusetts, against the Borrower, the Owner, Eurohypo, Prudential and other entities seeking payment of $10,134,993, plus treble damages, attorneys' fees and

costs. Turner also asserted that the filing of the complaint perfected Turner's lien on the Project. A true and correct copy of the Turner complaint is attached as <u>Exhibit I</u> hereto.

42. On information and belief, there exist additional liens on the Project not related to either the Senior Loan Agreement or otherwise permitted by either the Mezzanine Loan Agreement or Prudential. These liens, together with the purported Turner lien, are collectively referred to as the "Unpermitted Liens."

*The Guarantors' Obligations Under The Guaranties*

43. The existence of the Unpermitted Liens on the Project is an express breach of § 5.23 of the Loan Agreement and, in turn, is a Recourse Event under the Carveout Guaranty. The Guarantors are thus required to pay the amount due on the Guaranteed Obligations, including, but not limited to, full and prompt payment of all amounts due and owing under the Mezzanine Loan Agreement and certain environmental and construction consulting fees and expenses incurred by Prudential in connection with the Project. *See* Carveout Guaranty at §§ 1 and 2(d). The Guarantors' failure to pay all amounts due under the Mezzanine Loan Agreement constitutes a breach of their obligations under the Carveout Guaranty.

44. Additionally, pursuant to the Completion Guaranty, and as required by the September 7 Completion Guaranty Demand Notice, the Guarantors were required to satisfy the Guaranteed Obligations, including without limitation: the immediate completion and delivery of the Project lien-free, including removing the Unpermitted Liens; the full and prompt payment of all amounts required to be deposited with Eurohypo or paid by the Borrower or the Owner to keep the Senior Loan "in balance;" and the full and prompt payment of any and all Losses

incurred by Prudential directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA. The Guarantors' failure to perform the items set forth in the September 7 Completion Guaranty Demand Notice constitutes a breach of their obligations under the Completion Guaranty.

## COUNT I
### Claim on the Carveout Guaranty

45. Prudential realleges paragraphs 1 through 44.

46. The Carveout Guaranty is valid, binding, and enforceable against the Guarantors.

47. Any and all conditions precedent to the Guarantors' obligations under the Carveout Guaranty have been satisfied.

48. Pursuant to the Carveout Guaranty, the Guarantors are required to pay all Guaranteed Obligations of the Borrower.

49. The Guarantors have wrongfully refused to pay the amount due on the Guaranteed Obligations, including, but not limited to full and prompt payment of all amounts due and owing under the Mezzanine Loan Agreement.

## COUNT II
### Claim For Specific Performance on the Completion Guaranty

50. Prudential realleges paragraphs 1 through 49.

51. The Completion Guaranty is valid, binding, and enforceable against the Guarantors.

52. Any and all conditions precedent to the Guarantors' obligations under the Completion Guaranty have been satisfied.

53. Pursuant to the Completion Guaranty, the Guarantors are required to perform all Guaranteed Obligations of the Borrower.

54. The Guarantors have wrongfully refused to perform the Guaranteed Obligations, including without limitation, the immediate completion and delivery of the Project lien-free; the full and prompt payment of all amounts required to be deposited with Eurohypo or paid by the Borrower or the Owner to keep the Senior Loan "in balance;" and the full and prompt payment of any and all Losses incurred by Prudential directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA.

55. Prudential now seeks an order requiring the Guarantors to perform the Guaranteed Obligations.

## COUNT III
### Claim on the Guaranties
### Collection Costs

56. Prudential realleges paragraphs 1 through 55.

57. The Guaranties are valid, binding, and enforceable against the Guarantors.

58. Any and all conditions precedent to the Guarantors' obligations under the Guaranties have been satisfied.

59. Pursuant to the Guaranties, the Guarantors agreed to pay reasonable attorneys' fees and costs incurred with enforcing the Guaranties.

## COUNT V
### Claim on the Guaranties
### The Guarantors' Continuing Obligations Under The Guaranties

60. Prudential realleges paragraphs 1 through 64.

61. The Guaranties are valid, binding, and enforceable against the Guarantors.

62. Any and all conditions precedent to the Guarantors' obligations under the Guaranties have been satisfied.

63. The Borrower, by virtue of its defaults under the Senior Loan and Mezzanine Loan Agreements, may fail to perform other Guaranteed Obligations under the Guaranties.

64. Pursuant to the Guaranties, the Guarantors are required to pay the amount of, or perform, any other Guaranteed Obligations of the Borrower.

WHEREFORE, Prudential respectfully requests that this Court order that (i) the Guarantors to pay the amount of, and perform, the Guaranteed Obligations as set forth herein, and (ii) that the Guarantors, and their officers, agents, servants, employees, attorneys and those in concert or participation with them, be enjoined from selling, transferring, pledging, encumbering, mortgaging, or otherwise dissipating the Available Assets, any proceeds therefrom or any distributions related thereto, or otherwise taking any action which reduces the value of the Available Assets, absent further order of this Court, award reasonable attorneys' fees and costs incurred by Prudential in enforcing the Guaranties against the Guarantors and any other and further relief as this Court deems just.

Dated: New York, New York
      October 15, 2007

                      GOODWIN PROCTER LLP

                      /s/ Christopher J. Garvey
                      Christopher J. Garvey (CG 3323)
                      599 Lexington Avenue
                      New York, New York 10022
                      (212) 813-8800

                      -and-

                      Anthony M. Feeherry
                      Brian H. Mukherjee
                      Exchange Place
                      Boston, Massachusetts 02109
                      (617) 570-1000

LIBA/1834914.4