Exhibit B

## COMPLETION GUARANTY

This **COMPLETION GUARANTY** (collectively, with any amendments hereto, substitutions herefor, and modifications, renewals, and extensions hereof, this **"Guaranty"**) is executed as of October (8, 2005, by J. Ronald Terwilliger, William C. MacDonald, Joseph S. Torg, CFP Residential, L.P., a Texas limited partnership, and TCF Residential Partnership, Ltd., a Texas limited partnership (each a **"Guarantor** and collectively **"Guarantors"**), for the benefit of THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation (together with its successors and assigns, **"Lender"**).

### R E C I T A L S:

A.    Navy Yard Four Associates LLC, a Delaware limited liability company (**"Owner"**), is the owner of the Property.

B.    Navy Yard Four Associates Limited Partnership, a Delaware limited partnership (**"Borrower"**), the sole member of Owner, and Lender have entered into that certain Loan Agreement, of even date herewith (collectively, with any amendments thereto, substitutions therefor, and modifications, renewals, and extensions thereof, the **"Loan Agreement"**). All initially capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

C.    Pursuant to the Loan Agreement, Lender agreed, subject to the terms and conditions contained therein, to make a loan (**"Loan"**) to Borrower as evidenced by that certain Promissory Note, of even date herewith, made by Borrower to the order of Lender in the original principal amount of $18,466,000 (collectively, with any amendments thereto, substitutions therefor, and modifications, renewals, and extensions thereof, the **"Note"**).

D.    As a condition precedent to Lender's making the Loan, Lender has required that Guarantors enter into this Guaranty to unconditionally guarantee payment and performance to Lender of the Guaranteed Obligations (as herein defined) on the terms and subject to the conditions described herein.

E.    Guarantors or their affiliates are the owners of direct or indirect interests in Borrower, and Guarantors will directly benefit from Lender's making the Loan to Borrower.

**NOW, THEREFORE**, as an inducement to Lender to make the Loan to Borrower, and to extend such additional credit as Lender may from time to time agree to extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1.    **Defined Terms.**    The following terms as used herein shall have the following meanings:

"**ADA**" shall mean the Americans with Disabilities Act of 1990, as amended and supplemented from time to time.

"**ADA Claims**" shall mean, collectively, (a) any notices received by any Guarantor, Borrower, Owner or any Affiliate of any Guarantor, Borrower or Owner (whether such notices are from any federal, state or local governmental agency or regional office thereof) of the violation or potential violation of ADA occurring on, under or about the Property; and (b) all claims made or threatened by any third party against any Guarantor, Borrower, Owner, any Affiliate of any Guarantor, Borrower or Owner or otherwise with respect to the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from a violation of ADA.

"**Borrower**" as used herein shall include any new or successor corporation, association, partnership (general or limited), joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

"**Guaranteed Obligations**" shall mean (a) the full, complete, and punctual observance, performance, and satisfaction of all of the obligations, duties, and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the Completion of the Improvements, including, without limitation, lien-free and within the time period established in the Loan Agreement for Completion, (b) the full and prompt payment of all amounts required to be deposited with Senior Lender or paid by Borrower or Owner to keep the Senior Loan "in balance" at all times prior to Completion, and (c) the full and prompt payment of any and all Losses incurred by Lender directly or indirectly arising out of or attributable to any past, present or future non-compliance with the ADA.

"**Guarantor Claims**" shall mean all debts and liabilities of Borrower and Owner to Guarantors (or any of them), whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Borrower or Owner thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantors. Guarantor Claims shall include without limitation all rights and claims of Guarantors (or any of them) against Borrower or Owner (arising as a result of subrogation or otherwise) as a result of any Guarantor's payment of all or a portion of the Guaranteed Obligations to the extent the provisions of Section 2(c) of this Guaranty are unenforceable.

"**knowledge**", when used to modify a representation or warranty, shall mean actual knowledge.

Defined terms may be used in the singular or the plural. When used in the singular preceded by "a", "an", or "any", such term shall be taken to indicate one or more members of the relevant

- 2 -

class. When used in the plural, such term shall be taken to indicate all members of the relevant class.

## 2. Nature and Scope of Guaranty.

(a)  Guarantors hereby irrevocably and unconditionally guarantee to Lender (and its successors and assigns), jointly and severally, the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable.

(b)  This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance, is joint and several and is not a guaranty of collection. This Guaranty may not be revoked by any Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Guarantor and after (if any Guarantor is a natural person) a Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantors to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

(c)  The Guaranteed Obligations and the liabilities and obligations of Guarantors to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

(d)  If all or any part of the Guaranteed Obligations shall not be punctually paid or performed when due, whether at maturity or earlier by acceleration or otherwise, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations and perform all Guaranteed Obligations. Such demands may be made at any time coincident with or after the time for payment or performance of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

(e)  It shall not be necessary for Lender (and Guarantors hereby waive any rights which Guarantors may have to require Lender), in order to enforce such payment or performance by Guarantors, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other Person, (ii) enforce Lender's rights against the Collateral, (iii) enforce Lender's rights against any other guarantor of the Guaranteed Obligations, (iv) join Borrower or any others liable on

- 3 -

the Guaranteed Obligations in any action seeking to enforce this Guaranty, or (v) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

(f)     Each Guarantor accepts the provisions of the Loan Documents, and hereby waives notice of (i) any loans or advances made by Lender to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Note or of any other Loan Documents, (iv) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's or any other Loan Party's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property, (v) the occurrence of any breach by Borrower or Event of Default, (vi) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (vii) sale or foreclosure (or posting or advertising for sale or foreclosure) of the Collateral, (viii) protest, proof of non-payment or default by Borrower, or (ix) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and the obligations hereby guaranteed.

(g)     Guarantors agree to reimburse Lender for the reasonable fees and disbursements of counsel incurred in enforcement of this Guaranty (collectively, **"Enforcement Costs"**).  Any amounts properly due under this Section 2(g) shall be payable to Lender immediately upon demand.

(h)     In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief Law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, any prior release or discharge from the terms of this Guaranty given to Guarantors by Lender shall be without effect, and this Guaranty shall remain in full force and effect. It is the intention of Borrower and Guarantors that Guarantors' obligations hereunder shall not be discharged except by performance of such obligations and then only to the extent of such performance.

(i)     Notwithstanding anything to the contrary contained in this Guaranty, Guarantors hereby unconditionally and irrevocably waive, release and abrogate any and all rights they may now or hereafter have under any agreement, at law or in equity (including, without limitation, any Law subrogating Guarantors to the rights of Lender) to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or Owner for any payment made by Guarantors under or in connection with this Guaranty until full payment and performance of the Guaranteed Obligations.

(j)     It is the intention of the parties that Guarantors shall not be deemed to be a "creditor" or "creditors" (as defined in Section 101 of the Bankruptcy Code) of Borrower by reason of the existence of this Guaranty, in the event that Borrower becomes a debtor in any proceeding under the Bankruptcy Code, and in connection herewith, Guarantors

- 4 -

hereby waive any such right as a "creditor" under the Bankruptcy Code. This waiver is given to induce Lender to make the Loan to Borrower. After the Loan is paid in full and there shall be no obligations or liabilities under this Guaranty outstanding, including payment of Enforcement Costs, this waiver shall be deemed to be terminated.

3. **Events and Circumstances Not Reducing or Discharging Guarantors' Obligations.** Guarantors hereby agree that none of Guarantors' obligations under this Guaranty shall be released, diminished, impaired, reduced or adversely affected by any of the following, and waive any common Law, equitable, statutory or other rights (including, without limitation, rights to notice) which Guarantors might otherwise have as a result of or in connection with any of the following:

(a) Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

(b) The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, any Guarantor or any other party at any time liable for the payment or performance of all or part of the Guaranteed Obligations; or any dissolution of Borrower, any Guarantor or Owner; or any sale, lease or transfer of any or all of the assets of Borrower, any Guarantor or Owner; or any changes in the shareholders, partners or members of Borrower, any Guarantor or Owner; or any reorganization of Borrower, any Guarantor or Owner.

(c) The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including, without limitation, the fact that (i) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by Law, (ii) the act of creating the Guaranteed Obligations or any part thereof is *ultra vires*, (iii) the officers or representatives executing the Note or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (iv) the Guaranteed Obligations violate applicable usury Laws, (v) Borrower or any other Loan Party has valid defenses, claims or offsets (whether at Law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower (but Guarantors shall not be prevented from asserting any defenses otherwise available to them, taking into account other provisions hereof), (vi) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (vii) the Note or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that each Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

(d) Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantor, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally,

to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by Guarantors that any Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of any other party and fully perform the Guaranteed Obligations without assistance or support of any other party, and Guarantors have not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other parties will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to other parties to pay or perform the Guaranteed Obligations.

(e)    The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

(f)    Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including, without limitation, negligent, willful, unreasonable or unjustifiable impairment) of the Collateral.

(g)    The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of the Collateral, including but not limited to any neglect, delay, omission, failure or refusal of Lender (i) to take or prosecute any action for the collection of any of the Guaranteed Obligations, or (ii) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (iii) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

(h)    The fact that Lender's security interest in the Collateral shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantors that Guarantors are not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the Collateral.

(i)    Any payment by Borrower to Lender is held to constitute a preference under bankruptcy Laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

(j)    Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the Collateral, whether or not such action or omission prejudices Guarantors or increases the likelihood that any Guarantor will be required to pay or perform the Guaranteed Obligations pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantors that Guarantors shall be obligated to pay and perform the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether or not contemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

4.    **Representations and Warranties and Covenants.**

- 6 -

(a)  As an inducement to Lender to make the Loan, Guarantors hereby represent and warrant as follows, which representations and warranties shall be true as of the date hereof and, except with respect to matters which have been disclosed in writing to and approved by Lender and those matters set forth in sections (vii), (viii) and (ix), shall remain true throughout the term of the Loan:

(i)     This Guaranty and any other Loan Document executed by Guarantors have each been duly executed and delivered by Guarantors and each such document constitutes the valid and legally binding obligation of Guarantors, enforceable against such Guarantor in accordance with their respective terms.

(ii)    Each Guarantor who is not an individual has all corporate power to execute and deliver this Guaranty and to perform such Guarantor's obligations hereunder. The execution, delivery and compliance with the terms and provisions of this Guaranty by each Guarantor will not violate any provisions of any applicable Laws, or conflict or be inconsistent with, or result in any default under, any contract, agreement or commitment to which any Guarantor is bound, which violation, conflict, inconsistency or default would have a material adverse affect on the ability of the Guarantors as a group to perform their obligations under this Guaranty.

(iii)    No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the execution or delivery of this Guaranty by any Guarantor.

(iv)    Each Guarantor or an affiliate is the owner of a direct or indirect interest in Borrower, and has received, or will receive, a direct or indirect benefit from the making of the Loan to Borrower.

(v)     Each Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and the other Loan Parties and is familiar with the value of the Collateral; provided, however, no Guarantor is relying on such financial condition or the Collateral as an inducement to enter into this Guaranty.

(vi)    Lender has not made any representation, warranty or statement to any Guarantor in order to induce any Guarantor to execute this Guaranty.

(vii)   After giving effect to this Guaranty and the contingent obligations evidenced hereby, each Guarantor is solvent, and has assets which, based upon fair market considerations, exceed its obligations, liabilities (including, without limitation, contingent liabilities) and debts, and has property and assets sufficient to satisfy and repay his or its obligations and liabilities.

(viii)  Except as otherwise disclosed to Lender, there are no proceedings pending or, to the knowledge of any Guarantor, threatened before any court or administrative agency which, if decided adversely to any Guarantor, would

- 7 -

materially adversely affect the ability of the Guarantors as a group to perform their obligations under this Guaranty or the authority of any Guarantor to enter into this Guaranty, or the validity or enforceability of this Guaranty.

(ix)    Except for items that are not likely to have a material adverse affect on the ability of the Guarantors as a group to perform their obligations under this Guaranty, (x) each Guarantor has filed all required federal, state and local tax returns and has paid all taxes as shown on such returns as they have become due, and (y) to each Guarantor's knowledge, no claims have been assessed and are unpaid with respect to such taxes.

(b)    Each Guarantor covenants and agrees that (a) the Property shall at all times comply with all requirements of the ADA, (b) each Guarantor shall, at its sole cost and expense, comply with all reasonable written requests of Lender to (i) effectuate compliance with the ADA and (ii) comply with any directive from any governmental authority relating to ADA compliance and (c) each Guarantor shall immediately notify Lender in writing of (i) any non-compliance with the ADA related in any way to the Property and (ii) any written or oral notice or other communication of which any Guarantor becomes aware from any source whatsoever (including but not limited to a governmental entity) relating to the Property and connected in any way to the ADA or compliance therewith, possible liability of any Person pursuant to the ADA with respect to the Property, or any actual or potential administrative or judicial proceedings with respect to the Property in connection with the ADA. In the event Lender has a reasonable basis to believe that the Property is not in compliance with the ADA, upon reasonable notice from Lender, Guarantors shall, at Guarantors' expense, promptly cause an engineer or consultant reasonably satisfactory to Lender to conduct any ADA assessment reasonably required by Lender (the scope of which shall be determined in the sole and absolute discretion of Lender exercising commercially reasonable judgment) and promptly deliver the results of any such assessment. Guarantors shall cooperate with and provide Lender and any such Person designated by the Lender with access to the Property.

(c)    Guarantors shall immediately advise Lender in writing of: (a) any ADA Claims; and (b) the discovery by any Guarantor of any occurrence or condition on the Property or any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be subject to any ADA Claims. Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any ADA Claims and Guarantors shall pay to Lender, upon demand, all Costs incurred by Lender in connection therewith.

5. **Financial Statements.** Each Guarantor shall furnish or cause to be furnished to Lender annually, on or before December 31 of each year, a copy of the Estimated Collateral Value Statement prepared for such Guarantor as of the preceding June 30. Each such Estimated Collateral Value Statement will be in substantially the same form, and be prepared on substantially the same basis, as the Estimated Collateral Value Statement, dated as of June 30, 2004, prepared for the Guarantor.

- 8 -

6. **Subordination of Certain Indebtedness.**

(a)   Upon the occurrence of an Event of Default or the occurrence of an event which would, with the giving of notice or the passage of time, or both, constitute an Event of Default, Guarantors shall not receive or collect, directly or indirectly, from Borrower or Owner any amount upon the Guarantor Claims.

(b)   In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving any Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims. Should Lender receive, for application upon the Guaranteed Obligations or the Loan, any such dividend or payment which is otherwise payable to any Guarantor, and which, as between Borrower or Owner and such Guarantor, shall constitute a credit upon the Guarantor Claims, then upon payment to Lender in full of the Guaranteed Obligations or the Loan, such Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations or the Loan, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations or the Loan which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

(c)   In the event that, notwithstanding anything to the contrary in this Guaranty, any Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, Guarantors agree to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agree that they shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Lender, and Guarantors covenant promptly to pay the same to Lender.

(d)   Guarantors agree that any liens, security interests, judgment liens, charges or other encumbrances of any Guarantor upon the Collateral, the Property or any other assets of Borrower or Owner securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances of Lender upon the same, regardless of whether such encumbrances in favor of any Guarantor or Lender presently exist or are hereafter created or attached. Without the prior written consent of Lender, Guarantors shall not (i) exercise or enforce any creditor's right it may have against Borrower or Owner, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including, without limitation, the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interest, collateral rights, judgments or other encumbrances on the Collateral, the Property or any other assets of Borrower or Owner securing payment of the Guarantor Claims.

- 9 -

7. **Guaranty Separate from the Loan.**

(a)    Guarantors agree that this Guaranty is separate, independent of and in addition to the undertakings of Guarantors pursuant to the other Loan Documents.  A separate action may be brought to enforce the provisions hereof, which shall in no way be deemed to be an action on the Note, whether or not the Loan has been repaid and whether or not Lender would be entitled to a deficiency judgment following a judicial foreclosure, trustee's sale or UCC sale.  This Guaranty, and all rights and obligations hereunder, shall survive release of the Pledge Agreement, release of other security provided in connection with the Loan, UCC sale under the Pledge Agreement and/or any of the other Loan Documents (whether by assignment in lieu of foreclosure, or otherwise), exercise of Lender's control of Owner, any transfer of the membership interests in Owner, any transfer of the Property, and transfer of all of Lender's rights in the Loan, the Loan Documents, or the Collateral.

(b)    Guarantors waive all rights to require Lender to (i) proceed against or exhaust any security for the Loan, or (ii) pursue any remedy in Lender's power whatsoever.  Guarantors waive all defenses by reason of any disability or other defense under the Loan or by reason of the cessation from any cause whatsoever of Borrower's liability under the Loan, or that Guarantors may acquire by reason of Lender's election of any remedy against them including, without limitation, Lender's exercise of its rights to foreclose under the Pledge Agreement.

8.    **Performance by Lender of Guarantor's Obligations.**   If any Guarantor fails to perform or comply with any of Guarantors' agreements contained herein and Lender as provided for by the terms of this Guaranty shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the Costs of Lender incurred in connection with such performance or compliance, together with interest thereon at the rate following a default specified in the Note in effect from time to time shall be payable by Guarantors to Lender on demand.

9.    **Borrower and Lien Not Released.**   Without affecting the liability of Guarantors hereunder, and without affecting Lender's rights under this Guaranty, Lender may, from time to time and without notice to any lien holder or holder of any other right or other interest in and to the Collateral:  (a) release any Person liable for payment of the Indebtedness or the performance of any obligations under the Loan Documents; (b) waive or modify any provision of any of the Loan Documents or grant other indulgences; (c) release all or any part of the Collateral; (d) take additional security for any obligation mentioned in the Loan Documents; (e) subordinate its rights under any of the Loan Documents; or (f) consent to the granting of any easement.

10. **Disclosure of Information.**   Subject to Section 10.2 of the Loan Agreement, Lender shall have the right (but shall be under no obligation) to make available to any party for the purpose of granting participations in or Transferring all or any part of the Loan (including any governmental agency or authority and any prospective bidder at any sale of the Collateral) any and all information which Lender may have with respect to the Collateral, the Property, Borrower, Owner and any Guarantor, whether provided by Borrower, Owner, any Guarantor or any third party or obtained as a result of any independent investigations by or on behalf of

- 10 -

Lender. Guarantors agree that Lender shall have no liability whatsoever as a result of delivering any such information to any third party, and Guarantors, on behalf of themselves and their respective successors and assigns, hereby release and discharge Lender from any and all liability, claims, damages, or causes of action, arising out of, connected with or incidental to the delivery of any such information to any third party.

11. **Waiver of Statute of Limitations.** Guarantors hereby waive the right to assert any statute of limitations as a bar to the enforcement of the lien created by this Guaranty or to any action brought to enforce this Guaranty.

12. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy under this Guaranty or any of the other Loan Documents, or otherwise afforded by applicable Law, shall not be a waiver of or preclude the exercise of any right or remedy. Lender's acceptance of payment of any sum secured by any of the Loan Documents after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. With respect to all Loan Documents, only waivers made in writing by Lender shall be effective against Lender.

13. **Notices.** Any notice or other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served, telecopied or sent by overnight courier or U.S. Mail and shall be deemed given: (a) if served in person, when served; (b) if telecopied, on the date of transmission if before 3:00 p.m. (Eastern time) on a business day or, if not on the next following business day; <u>provided</u> that a hard copy of such notice is also sent pursuant to <u>clause (c)</u> or <u>clause (d)</u> below; (c) if by overnight courier, on the first business day after delivery to the courier; or (d) if by U.S. Mail, certified or registered mail, return receipt requested, when delivered or refused.

LIBD/1687745.7

*Notices to Guarantors:*

        J. Ronald Terwilliger
        2859 Paces Ferry Road, Suite 1100
        Atlanta, GA  30339

        William C. MacDonald
        6110 Executive Blvd., Suite 315
        Rockville, MD  20852

        Joseph S. Torg
        15 Old Danbury Road, Suite 100
        Wilton, CT  06897

        CFP Residential, L.P.
        2100 McKinney Avenue, Suite 400
        Houston, TX  77042
        Attention:  Harlan R. Crow

        TCF Residential Partnership, Ltd.
        2100 McKinney Avenue, Suite 400
        Houston, TX  77042
        Attention:  Harlan R. Crow

*with a copy to*:

        Jones Day
        325 John H. McConnell Blvd., Suite 600
        Columbus, OH  43215
        Attention:  Michael K. Ording
        Telephone:    (614) 281-3839
        Telecopy:     (614) 461-4198

*Notices to Lender:*

        Prudential Real Estate Investors
        8 Campus Drive, 4th Floor
        Parsippany, New Jersey  07054
        Attention:  Ben Penaliggon
        Telephone:  (973) 683-1690
        Telecopy:  (973) 683-1752

*and to:*

> Prudential Real Estate Investors
> 8 Campus Drive, 4th Floor
> Parsippany, New Jersey 07054
> Attention: Joan N. Hayden, Esq.
> Telephone: (973) 683-1772
> Telecopy: (973) 683-1788

*and to:*

> Goodwin | Procter LLP
> Exchange Place
> Boston, Massachusetts 02109
> Attention:     Minta E. Kay, Esq.
> Telephone:     (617) 570-1877
> Telecopy:      (617) 227-8591

Notice sent by counsel for any party shall be deemed to constitute notice from such party. Any party, by written notice to the other in the manner herein provided, may designate an address different from that set forth above. Notices given in any other fashion shall be deemed effective only upon receipt.

14. <u>**Governing Law; Severability.**</u> This Guaranty shall be governed by and construed in accordance with the internal Laws of the State of New York. The invalidity, illegality or unenforceability of any provision of this Guaranty shall not affect or impair the validity, legality or enforceability of the remainder of this Guaranty, and to this end, the provisions of this Guaranty are declared to be severable.

15. <u>**No Waiver; Cumulative Remedies.**</u> No waiver of any breach or default hereunder shall constitute or be construed as a waiver by Lender of any subsequent breach or default or of any breach or default of any other provision of this Guaranty. Except to the extent that Lender has specifically and expressly waived such remedies in this Guaranty or otherwise, the rights and remedies hereunder and under any of the other Loan Documents provided are cumulative and may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by Law. Lender may resort to and realize on the Collateral simultaneously with any acts or proceedings initiated by Lender in its sole and conclusive discretion to resort to or realize upon any other sources of repayment of the Indebtedness, including, but not limited to, the personal liability of each Guarantor and any Person which has guaranteed repayment of the Indebtedness.

16. <u>**Successors and Assigns; Agents.**</u> The covenants and agreements contained in this Guaranty and all obligations of Guarantors hereunder shall be binding upon the successors, assigns, executors, and personal representatives of Guarantors, except that no Guarantor shall have the right to assign its rights hereunder or any interest herein without the prior written consent of Lender. The covenants and agreements contained in this Guaranty and all obligations of Guarantors hereunder shall, together with the rights and remedies of Lender hereunder, inure to the benefit of Lender and its successors and assigns. In exercising any rights under the Loan Documents or taking any actions provided for therein, Lender may act through its employees,

- 13 -

LIBD/1687745.7

agents or independent contractors as authorized by Lender. Neither this Guaranty nor anything set forth herein is intended to, nor shall it, confer any rights on any other Person other than the parties hereto and all third party rights are expressly negated.

17. **Headings.** The captions and headings of the sections and paragraphs of this Guaranty are for convenience only and are not to be used to interpret or define the provisions hereof.

18. **Recitals.** The recitals and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered *prima facie* evidence of the facts and documents referred to therein.

19. **Injunctive Relief.** Guarantors recognize that in the event Guarantors fail to perform, observe or discharge any of Guarantors' obligations hereunder, no remedy of Law will provide adequate relief to Lender, and agree that Lender shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

20. **Waiver of Subrogation.** Guarantors shall have no right of subrogation as to any of the Collateral until full and complete performance and payment of the Indebtedness.

21. **Waiver of Consequential Damages.** In no event shall Lender be liable to Guarantors for consequential damages, whatever the nature of a breach by Lender of its obligations under this Guaranty or any of the Loan Documents, and each Guarantor for itself and its successors hereby waives all claims for consequential damages.

22. **Sole Discretion of Lender.** Except as may otherwise be expressly provided to the contrary, wherever pursuant to this Guaranty Lender exercises any right given to it to consent or not consent, or to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to consent or not consent, or to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory, shall be granted, withheld or conditioned in the sole and absolute discretion of Lender and shall be final and conclusive.

23. **Reasonableness.** If at any time Guarantors believe that Lender has not acted reasonably in granting or withholding any approval or consent under this Guaranty as to which approval or consent either Lender has expressly agreed to act reasonably, or absent such agreement, a court of law having jurisdiction over the subject matter would require Lender to act reasonably, then Guarantors' sole remedy shall be to seek injunctive relief or specific performance and no action for monetary damages or punitive damages shall in any event or under any circumstance be maintained by Guarantors against Lender.

24. **Time of Essence.** Time is of the essence of this Guaranty and the other Loan Documents and the performance of each of the covenants and agreement contained herein and therein.

25. **Rights and Remedies.** If Guarantors become liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantors. The

- 14 -

exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

26. **Jury Trial Waiver.** GUARANTORS AND LENDER, BY ITS ACCEPTANCE OF THIS GUARANTY, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS GUARANTY AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTORS AND LENDER, AND GUARANTORS ACKNOWLEDGE THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTORS AND LENDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. GUARANTORS AND LENDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

27. **Venue.** GUARANTORS AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS GUARANTY SHALL BE LITIGATED, AT LENDER'S SOLE DISCRETION AND ELECTION, ONLY IN COURTS HAVING A SITUS WITHIN THE COUNTY OF NEW YORK, NEW YORK. GUARANTORS HEREBY CONSENT AND SUBMIT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SAID COUNTY AND STATE.

28. **Joint and Several.** The obligations of Guarantors under this Guaranty shall be joint and several obligations of Guarantors and of each Guarantor, if more than one, and of each Guarantor's successors and assigns. Guarantors hereby irrevocably and unconditionally covenant and agree that they are liable, jointly and severally, for the Guaranteed Obligations as a primary obligor, and that each Guarantor shall fully perform jointly and severally, each and every term and provision hereof.

29. **Counterparts.** This Guaranty may be executed in multiple counterparts, each of which shall constitute an original, and together shall constitute one and the same instrument.

30. **Final Agreement; Modification.** This Guaranty represents the entire agreement among Guarantors and Lender with respect to the subject matter hereof and supersedes all prior agreements among the parties with respect to the subject matter hereof. This Guaranty and the other Loan Documents may only be modified by written instrument executed by the applicable parties. Neither Lender nor any employee of Lender has made or is authorized to make any representation or agreement upon which Guarantors may rely unless such matter is made for the benefit of Guarantors and is in writing signed by an authorized officer of Lender. Guarantors

- 15 -

LIBD/1687745.7

agree that they have not and will not rely on any custom or practice of Lender, or on any course of dealing with Lender, in connection with this Guaranty or otherwise in connection with the Loan unless such matters are set forth in this Guaranty or in an instrument made for the benefit of Guarantors and in a writing signed by an authorized officer of Lender.

31. **Facsimile Signatures.** Signatures to this Guaranty transmitted by telecopy shall be valid and effective to bind the party so signing. Each party agrees to promptly deliver an execution original to this Guaranty with its actual signature to the other party, but a failure to do so shall not affect the enforceability of this Guaranty, it being expressly agreed that each party to this Guaranty shall be bound by its own telecopied signature and shall accept the telecopied signature of the other party to this Guaranty.

32.    **Personal Liability.**

(a)  Notwithstanding anything in this Guaranty to the contrary, except as provided in Section 32(b), Lender shall look for satisfaction of the obligations of a Guarantor under this Guaranty only to the following property of such Guarantor (the "Available Assets")

(i)    the interests of such Guarantor in any entity that is, at the time of enforcement of this Guaranty, (x) engaged in the business of holding, constructing, developing or providing property management or overhead services for real estate designed for residential use in the United States of America and (y) affiliated with Trammell Crow Residential Company, or any subsidiary thereof or any successor or assign of all or substantially all of the assets thereof; and

(ii)   any receivable due such Guarantor from any entity described in paragraph (i) above.

Except for the Available Assets, Lender shall not look to a Guarantor's tangible or intangible real and personal property (including cash, cash equivalents, securities, partnership interests, receivable or similar intangible personal property) for satisfaction of any Guarantor's obligations hereunder. Subject to Section 32(b), Lender may not look to the tangible or intangible proceeds of any assets of Guarantor, including proceeds of the Available Assets, except as specifically provided in paragraph (ii) above. No Guarantor shall transfer or place any or all proceeds from any Available Assets into any of the Terwilliger Entities (as defined below), to the extent that transferring or placing such proceeds therein would result in the value of the Available Assets falling below $50,000,000.

(b)  Notwithstanding the limitations in Section 32(a), Lender may look to proceeds of Available Assets realized by a Guarantor after the Aggregate Collateral Value, as reported in the annual Collateral Value Statements prepared for the Guarantors, (x) is less than $50,000,000 or (y) as a result of a transaction that causes the Aggregate Collateral Value to be less than $50,000,000 (a "Trigger Transaction"). The term "Aggregate Collateral Value" means the aggregate value of the Available Assets as calculated on the basis provided in the notes to the Collateral Value Statements of Guarantors dated as of June 30, 2004. Further, upon the occurrence of Trigger

- 16 -

Transaction, the Guarantors shall be jointly and severally personally liable to Lender for the amount equal to the proceeds generated by the Available Assets as a result of the Trigger Transaction less any portion of those proceeds collected by Lender. However, notwithstanding this Section 32(b), in no event will Lender be entitled to satisfy any obligation of a Guarantor from any of the following assets (collectively, "Excluded Assets"): (a) the primary personal residence of the Guarantor, (b) the Guarantor's nonbusiness real estate, including rural, vacation and resort property, up to $1,000,000 in value in the aggregate for each Guarantor, (c) the Guarantor's personal automobiles and other tangible personal property, including household goods, clothing, silverware, gems, jewelry and works of art not to exceed $1,500,000 in value in the aggregate for each Guarantor, (d) the interests listed in Section 32(c), and (e) proceeds of Excluded Assets.

(c)    In no case may Lender look to any of the following owned by a Guarantor (even if it otherwise would be available under the terms of Section 32(a) or 32(b)) or any proceeds of such interest: (x) any of the following owned as of the date hereof or acquired as a result of merger, conversion, stock split, stock dividend or similar transaction: stock in AvalonBay Communities, Inc.; units in Avalon DownREIT V, L.P., stock in Gables Residential Trust, units in Gables Realty Limited Partnership, units in Equity Residential, units in ERP Operating Limited Partnership, stock in BRE Properties, Inc., units in BRE Property Investors, LLC, units in AMLI Residential Property Trust, units in AMLI Residential Properties, L.P., or units in Merry Land DownREIT I, L.P., or (y) any of the following, whether now owned or hereafter acquired (collectively, the "Terwilliger Entities"):  ownership in J. Ronald Terwilliger Grantor Trust, stock in JRT Holdings, Inc., ownership in Terwilliger Partners, LLLP and interests in TCR Affordable Housing Limited Partnership.

(d)    The term "residential" as used in this Section 32 means single family and multi-family dwellings, residential land/lot developments, and senior living communities.

Notwithstanding anything to the contrary contained herein, it shall be an Event of Default hereunder and under the other Loan Documents if the collective aggregate value of the Available Assets of the Guarantors (calculated on the basis provided in the notes to the Estimated Collateral Value Statement dated as of June 30, 2004) falls to less than $50,000,000, unless the Guarantors correct such deficiency within thirty (30) days following the occurrence of such event. Guarantors may correct such deficiency by: (i) obtaining and delivering to Lender one or more new guaranties, each of which shall be in form and content substantially the same as this Guaranty (or in such other forms as Lender may in its good faith business judgment approve) from one or more persons whose Available Assets are sufficient to correct the deficiency, (ii) delivering to Lender and thereafter maintaining in full force and effect (for so long as the deficiency exists) an unconditional and irrevocable letter of credit, in a face amount sufficient to correct the deficiency, naming Lender as beneficiary, and otherwise in form and content and issued by an institution acceptable to Lender in the exercise of its good faith business judgment, or (iii) amending this Guaranty (in form and substance acceptable to Lender in the exercise of its good faith business judgment) in a manner such that the definition of Available Assets is expanded to included additional assets that are sufficient to correct the deficiency and otherwise acceptable to Lender in its good faith business judgment. Upon the occurrence of an Event of

- 17 -

Default, Lender may immediately exercise any and all of its rights and remedies pursuant to the other Loan Documents and may enforce this Guaranty against Guarantors.

Notwithstanding anything to the contrary contained herein, the Available Assets of any Guarantor who has (i) filed a voluntary bankruptcy or insolvency proceeding or (ii) become subject to an involuntary bankruptcy or insolvency proceeding, shall be excluded for the purposes of determining whether or not the Aggregate Collateral Value of the Available Assets is less than $50,000,000.

   33. **Termination.**  Any obligation for initial correction of work on the Improvements will terminate one year after issuance of a final permanent certificate of occupancy for the Property and all of the Improvements which permits the Property and the Improvements to be used for its intended purpose, subject to tenant improvement work for the retail portion of the Property and completion of purchasers selections for Unit options, extras or upgrades.  Any obligation for correction of the corrective work on the Improvements will terminate six (6) months after performance of such work, but in no event prior to the expiration of one year after receipt of the final permanent certificate of occupancy for the Property and all of the Improvements which permits the Property and the Improvements to be used for its intended purpose..

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

LIBD/1687745.7

**IN WITNESS WHEREOF**, each Guarantor has executed this Guaranty as of the date first above written.

**GUARANTORS:**

_____
J. Ronald Terwilliger, an individual


_____
William C. MacDonald, an individual


_____
Joseph S. Torg, an individual


CFP Residential, L.P., a Texas limited partnership

By:    Crow Family, Inc., a Texas corporation, its
       general partner


       By:_____
       Name:_____
       Title:_____


TCF Residential Partnership, Ltd., a Texas limited partnership

By:    Crow Family, Inc., a Texas corporation, its
       general partner


       By:_____
       Name:_____
       Title:_____

**IN WITNESS WHEREOF**, each Guarantor has executed this Guaranty as of the date first above written.

**GUARANTORS:**

_____
J. Ronald Terwilliger, an individual

_____
William C. MacDonald, an individual


_____
Joseph S. Torg, an individual


CFP Residential, L.P., a Texas limited partnership

By:    Crow Family, Inc., a Texas corporation, its
       general partner


       By:_____
       Name:_____
       Title:_____


TCF Residential Partnership, Ltd., a Texas limited partnership

By:    Crow Family, Inc., a Texas corporation, its
       general partner


       By:_____
       Name:_____
       Title:_____

**IN WITNESS WHEREOF**, each Guarantor has executed this Guaranty as of the date first above written.

## GUARANTORS:

_____
J. Ronald Terwilliger, an individual

_____
William C. MacDonald, an individual

_____
Joseph S. Yorg, an individual

CFP Residential, L.P., a Texas limited partnership

By:    Crow Family, Inc., a Texas corporation, its
       general partner

       By:_____
       Name:_____
       Title:_____

TCF Residential Partnership, Ltd., a Texas limited
partnership

By:    Crow Family, Inc., a Texas corporation, its
       general partner

       By:_____
       Name:_____
       Title:_____