Exhibit C

Western Conference of Teamsters Pension Trust Fund, and no Loan Party is a participating employer in the Western Conference of Teamsters Pension Trust Fund.

4.17    **Solvency.** As of the date hereon, neither Borrower nor any other Loan Party is insolvent and there has been no: (a) assignment made for the benefit of the creditors of any of them; (b) appointment of a receiver for any of them or for the property of any of them; or (c) bankruptcy, reorganization, or liquidation proceeding instituted or contemplated by or against any of them.

4.18    **Financial Condition; No Change.** Borrower has heretofore delivered to Lender copies of the most current financial statements of Borrower and Owner. Such financial statements present fairly the financial condition of Borrower, Owner and Guarantors, as applicable, as of the dates in question. Since the dates of such statements, there has been no material adverse change in the structure, business operations, credit, prospects or financial condition of Borrower, Owner or the Property and no event that would constitute an Event of Default under Section 8.1(k). To Borrower's knowledge, the Estimated Collateral Value Statement for each Guarantor accurately lists the Available Assets (as defined in the Carve-Out Guaranty) of such Guarantor as of the date of such Estimated Collateral Value Statement and the value as of the date of such Estimated Collateral Value Statement of such Available Assets calculated on the basis provided in the notes thereto.

4.19    **Single Asset Entity.** Neither Borrower nor Owner (a) holds, directly or indirectly, any ownership interest (legal or equitable) in any real or personal property, other than the Property and personal property used in connection with the construction or operation of the Property and ancillary or related assets and the Collateral; (b) is a shareholder or partner or member of any other Person; (c) conducts any business other than the ownership, development, management and operation of the Property and ancillary or related businesses and the Collateral; (d) has made or will make any loans or advances to any third party or Affiliate of any Loan Party who is not an individual; (e) has failed to do or will fail to do anything necessary to preserve its existence or has failed to, or will fail to, observe all applicable corporate or partnership formalities necessary to maintain its existence; (f) has failed or will fail to conduct its business in its own name and as presently conducted; (g) has failed or will fail to maintain financial statements, books and records and bank accounts separate from those of its Affiliates who is not an individual or has failed or will fail to file its own tax returns; (h) has failed to be, or will fail to hold itself out to the public as, a legal entity separate and distinct from any other entity (such as its Affiliates); (i) has failed or will fail to allocate fairly and reasonably any overhead and expense for office space shared with its Affiliates; (j) has commingled or will commingle its assets with assets of its Affiliates or any other Persons; (k) has failed or will fail to maintain its assets in a manner such that its individual assets can be segregated and identified from those of any of its Affiliates or any other Person without undue cost or difficulty; (l) has held or will hold itself out as responsible for any other Person's debts or obligations; (m) has failed or will fail to pay any liabilities, including salaries of its employees, if any, out of its own funds and not funds of any of its Affiliates; (n) has failed or will fail to maintain relationships comparable to an arm's-length transaction with its Affiliates and to enter into transactions with its Affiliates only on a commercially reasonably basis and on terms similar to those of an arm's-length transaction; (o) has failed or will fail to comply with and observe in all material respects the Delaware Act and organizational formalities in order to maintain its separate existence; (p) has failed or will

26

fail to maintain its books, records, resolutions and agreements as records of the applicable Person; (q) has formed, acquired or held an interest in any subsidiary (other than Owner) or will form, acquire or hold an interest in any subsidiary (other than Owner); (r) has sought, effected or caused, or will seek, effect or cause any constituent party to seek or effect, the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, or the sale of substantially all of the assets of Owner or Borrower, except for the sale of Units, parking spaces and storage spaces in accordance with the terms of this Agreement; (s) has funded and will not fund the operations of any of its Affiliates (except Owner) or pay their expenses; and (t) has kept and will keep careful records of all transactions by and between Owner, Borrower and their Affiliates and has documented and will document all such transactions and all payables to such Persons completely and accurately.

4.20    **No Broker.** No brokerage commission or finder's fee is owing to any broker or finder arising out of any actions or activity of any Loan Party in connection with the Loan.

4.21    **Leases.** None of Owner, Borrower and any agent or either of them has entered into any lease or other arrangements for occupancy of space for any portion of the Property other than Leases approved in writing by Lender.

4.22    **No Event of Default.** No Event of Default under this Agreement or any of the other Loan Documents has occurred and is continuing.

4.23    **RICO.** None of the Loan Parties has been charged with nor, to Borrower's knowledge, is any of them under investigation for, possible violations of the Racketeer Influenced and Corrupt Organizations Act, the Continuing Criminal Enterprise Act, the Controlled Substance Act of 1978, or similar laws providing for the possible forfeiture of any of its respective assets or properties. Neither Borrower nor Owner has purchased any portion of the Property or interest therein with the proceeds of any illegal activity. No Loan Party has acquired an interest in Owner or Borrower with the proceeds of any illegal activity.

4.24    **No Set-Off.** The Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense by any Loan Party, including the defense of usury, other than any such defense attributable to Lender's express behavior, nor would the exercise of any of the terms of the Loan Documents, or the exercise of any rights thereunder, render the Loan Documents unenforceable.

4.25    **Priority of Liens.** The Pledge Agreement creates a valid and enforceable first priority lien on the Collateral described therein in favor of Lender. Other than the UCC financing statements granted in favor of Lender pursuant to the terms of this Agreement, neither Owner nor Borrower has granted any UCC financing statements in favor of any other secured party related to the Collateral or, except pursuant to the Senior Loan Documents, the Property.

4.26    **Environmental Reports.** Except as set forth in the environmental reports listed in Schedule 4.26 (the "**Environmental Reports**"), no Loan Party has any knowledge of any adverse environmental condition or circumstance affecting the Property, which it has not disclosed in writing to Lender.

4.27    **Construction Documents.** Borrower has furnished Lender with a true, correct and complete copy of each of the Construction Documents.

4.28    **Construction Budget and Sources and Uses.** The amounts set forth in the Construction Budget present, as of the date hereof, a true, full and complete itemization by category of all costs, expenses and fees which Borrower or Owner expects to pay or anticipates becoming obligated to pay to Complete the Improvements and to pay all interest, fees and other amounts due in connection with the Senior Loan until Completion.

4.29    **Labor Relations.** Neither Borrower nor Owner is engaged in any unfair labor practice. There is (i) no unfair labor practice complaint pending against Borrower or Owner or, to the best knowledge of Borrower, threatened against either of them before the National Labor Relations Board, (ii) no grievance or arbitration proceeding arising out of or under any collective bargaining agreement pending against Borrower or Owner or threatened against either of them, (iii) no strike, labor dispute, slowdown or stoppage pending against Borrower or Owner, and (iv) no question concerning union representation existing with respect to employees of Borrower or Owner.

4.30    **Intellectual Property.** Borrower or Owner owns or holds licenses or other rights to or under all the patents, patent applications, trademarks, service marks, trademark and service mark registrations and applications therefor, trade names, copyrights, copyright registrations and applications therefor, trade secrets, proprietary information, computer programs, data bases, licenses, permits, franchises and formulas, or rights with respect to the foregoing which are necessary to the operation of the business of Borrower or Owner and the absence of which might materially and adversely affect the business, affairs, assets or financial condition of Borrower, Owner or the Property (collectively, "**Intellectual Property**"), without any known material conflict with the rights of others. Borrower has no knowledge of any existing or threatened claim by any Person contesting the validity, enforceability, use or ownership of the Intellectual Property, or of any existing state of facts that would support a claim that use by Borrower or Owner of any such Intellectual Property has infringed or otherwise violated any proprietary rights of any other Person, which could reasonably be expected to have a material adverse effect with respect to the Property, Borrower or Owner.

4.31    **OFAC Compliance.** Borrower will not permit the transfer of any direct interest in Borrower, Owner or any other Loan Party to any person or entity (or any beneficial owner of such entity) who is listed on the specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury pursuant to Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) and/or any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of Office of Foreign Asset Control, Department of the Treasury or pursuant to any other applicable Executive Orders (such lists are collectively referred to as the "**OFAC Lists**"). Borrower will not knowingly enter into or knowingly permit Owner to enter into a lease, contract or other agreement with any party who is listed on the OFAC Lists. Borrower shall immediately notify Lender if Borrower has knowledge that any owner of a direct interest in Borrower is listed on the OFAC Lists or (A) is indicted on or (B) arraigned and held over on charges involving money laundering or predicate crimes to money laundering. Borrower shall immediately notify Lender if Borrower knows that any tenant is listed on the OFAC Lists or (A) is convicted on, (B) pleads

28

nolo contendere to, (C) is indicted on or (D) is arraigned and held over on charges involving money laundering or predicate crimes to money laundering. Borrower further represents and warrants to Lender that neither Borrower nor any other Loan Party is currently listed on the OFAC Lists.

4.32    **Constituent Documents**. "**Constituent Documents**" mean collectively, the Declaration, any and all applications for registration, public offering statements, master deed, bylaws of the Association, and other equivalent documents related to the condominium regime for the Property. Borrower represents and warrants to Lender that the Constituent Documents shall comply with all applicable government laws, ordinances, codes, rules, regulations, orders and decrees, including any applicable zoning, use, environmental protection, and other building laws, ordinances or regulations applicable thereto.

4.33    **Additional Agreements**. Borrower represents and warrants to Lender that it has complied with or received written waivers for all terms of the Land Disposition Agreement, the Cooperation Agreement and the Transportation Agreement, to be met on or before the date of this Agreement and has provided Lender with a copy of each such written waiver.

## ARTICLE 5 - BORROWER'S COVENANTS

5.1    **Payment of Indebtedness; Performance of Obligations.** Borrower shall promptly pay the Indebtedness when due and shall promptly perform all other obligations of Borrower to Lender.

5.2    **Taxes and Other Obligations.** Except as expressly permitted by the term of this Section 5.2, Borrower shall pay all Charges, when due, and before any interest, collection fees or penalties shall accrue thereon. Borrower shall have the right to contest, or cause others to contest, in good faith by appropriate proceedings, the amount or validity of any such Charges, so long as: (a) Borrower has given prior written notice to Lender of Borrower's intent to so contest or object to (or cause to be so contested or objected to) any such Charges that are material; (b) Borrower or such other Person, as applicable, is permitted to contest the same under the Senior Loan Documents, (c) such contest stays the enforcement or collection of the Charges or any lien created; and (d) the Charges or lien created are bonded or insured over by the Title Company or Borrower has posted security therefor in accordance with the provisions of the Senior Loan Documents and in a manner reasonably acceptable to Lender. Upon the request of Lender, Borrower shall immediately furnish to Lender all notices of amounts due for all Charges and receipts evidencing payment for all Charges not being contested by Borrower. Borrower shall promptly notify Lender of any lien on all or any part of the Property and shall promptly discharge any unpermitted lien or encumbrance.

5.3    **Insurance.** Borrower shall cause Owner to keep the Property insured as is required by the Senior Loan Documents. Regardless of the requirements of the Senior Lender, Borrower shall cause Owner's insurance to include (i) an "all risk" form of builder's risk insurance in the full replacement cost of the Improvements (including "all risk" coverage for flood and/or surface water insurance) with Lender's interest protected under a loss payee clause, (ii) a policy of commercial general liability insurance (occurrence form) having a limit of not less than $1,000,000 per single occurrence, $2,000,000 aggregate, (iii) comprehensive

automobile liability insurance having a combined single limit of not less than $1,000,000 and (iv) an umbrella policy of commercial general liability insurance having a limit of not less than $10,000,000. Such insurance policies shall be issued by insurance companies with a rating of not less than A- Class VIII in the latest edition of Best's Insurance Guide. Borrower shall cause Owner to maintain the Environmental Policy. Lender shall be a named insured party on the liability insurance policy and the Environmental Policy, and Borrower shall deliver to Lender certified copies of such insurance policies, together with certificates evidencing the coverage of Lender under the liability policy and the Environmental Policy promptly upon issuance or renewal thereof. Promptly following issuance thereof, Borrower shall deliver to Lender true, correct and complete copies of all such insurance policies. All policies must require the insurance carrier to give Lender a minimum of thirty (30) days' notice in the event of modification or cancellation. In case of loss or damage by fire or other casualty, Borrower shall give written notice thereof to the insurance carrier(s) and to Lender within five (5) days of the date of such loss, damage or casualty.

5.4    <u>Escrows.</u>

(a)    Following the occurrence of an Event of Default, if not so established and held with Senior Lender, Borrower shall establish a real estate tax and assessment escrow and an insurance escrow with Lender in accordance with the terms of this <u>Section 5.4</u>. On the first day of each calendar month Borrower shall deposit into such escrow one-twelfth (1/12) of the annual real estate taxes and assessments and the annual insurance premiums for the Property, each as estimated by Lender. If at any time following the occurrence of an Event of Default, there are insufficient funds in either such escrow, when added to such monthly escrow payments, to pay the next due real estate tax and assessment invoices or insurance premiums, as the case may be, for the Property, immediately upon Lender's request Borrower shall deposit into the applicable escrow an amount equal to such deficiency.

(b)    The escrows established pursuant to the terms of <u>Section 5.4(a)</u> are hereby pledged as additional security for the Loan and shall be held to be irrevocably applied for the purposes for which made hereunder and shall not be subject to the direction or control of Borrower; <u>provided</u>, <u>however</u>, that neither Lender nor any depositary holding such funds shall be liable for any failure to apply to the payment of taxes and assessments, or insurance premiums any amount so deposited unless (i) Borrower shall have requested Lender in writing to make application of such funds to the payment of the particular taxes or assessments or the payment of the particular insurance premiums as the case may be, accompanied by the bills for such taxes and assessments or insurance premiums, (ii) there shall exist no default or Event of Default hereunder or under any of the Loan Documents, (iii) there are sufficient funds in the such escrows to pay the particular taxes, assessments, or insurance premiums, and (iv) following payment of such taxes, assessments, or insurance premiums, such escrows will be "in balance" in the reasonable opinion of Lender.

30

5.5    **Condemnation.**  Borrower shall within three (3) business days of its receipt of notice thereof, notify Lender of any pending or threatened action or proceeding relating to any condemnation or other taking of the Property, or part thereof, and after consultation with and subject to Lender's written approval, Borrower shall appear in and prosecute, or cause Owner to appear in and prosecute,  any such action or proceeding and/or settle or compromise any claim in connection therewith.

5.6    **Preservation and Maintenance of the Property.**  Borrower shall: (a) not commit or permit Owner to commit waste or permit or allow Owner to permit impairment or deterioration of the Property; (b) not abandon or permit Owner to abandon the Property; (c) after Completion, keep and cause Owner to keep the Property in good repair and restore or repair or cause Owner to restore and repair promptly, in a good and workmanlike manner, all or any part of the Property that suffers a casualty loss to the equivalent of its condition after Completion of construction; and (d) give notice in writing to Lender of and, unless otherwise directed in writing by Lender, cause Owner to appear in and defend any action or proceeding purporting to affect the Property, the security granted by the Loan Documents or the rights or powers of Lender. Borrower shall not (and shall not permit Owner to) remove, demolish or alter any improvement on the Land except when incident to Completion and to the extent contemplated by the Construction Documents or to the extent required to perform tenant improvement work to a tenant's space as required by the terms of the applicable Lease or as a closing condition under a Qualified Sale Contract.  Borrower shall promptly (and shall cause Owner promptly to) comply with all applicable Laws having jurisdiction over Borrower, Owner or the Property, and shall take all actions necessary to bring the Property into compliance with all applicable Laws (whether now existing or hereafter enacted).  Borrower shall not seek, cause or consent to changes in the plat of subdivision, zoning classification or use of any part of the Property without Lender's prior written consent.

5.7    **Lienable Work.**  After Completion, no excavation, construction, earth work, site work or any other mechanic's lienable work shall be done to or for the benefit of the Property, without Lender's approval, except for tenant improvements under Leases, interior buildouts and custom work in Units to the extent required by a Qualified Sale Contract, and normal repair and maintenance in the ordinary course of business.

5.8    **Personal Property.**  Following Completion, no Loan Party and no Affiliate of any Loan Party shall, without the prior written consent of Lender, Transfer (except through encumbrances, if any, permitted under the Loan Documents), remove or permit to be removed from the Property any Personal Property, with the exception that (i) so long as no Event of Default exists, Owner may sell or otherwise dispose of the Personal Property when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of the Property, but only upon replacing the same with other Personal Property at least equal in value and utility to the disposed Personal Property and (ii) Personal Property related to a residential or retail Unit, parking space or storage space in the Property may be Transferred with such Unit, parking space or storage space.

5.9    **Leases.**  Borrower shall not without Lender's prior written consent (i) enter into or permit Owner to enter into a  lease for any portion of the retail portion of the Property, or modify, amend, waive any material provision of, terminate or cancel (or permit Owner to do any

31

of the foregoing with respect to) any Lease of retail space in the Property or (ii) enter into (or permit Owner to enter into) a Lease for any Unit, or modify, amend, waive any material provision of, terminate or cancel (or permit Owner to do any of the foregoing with respect to) any Lease of a Unit. All lessees of retail space in the Property shall be required at Lender's election to execute estoppel certificates in form and substance reasonably satisfactory to Lender.

5.10    **Property Manager.** This Section 5.10 shall apply to the extent Borrower or Owner (as distinguished from the Association), enters into any management contract for all or a part of the Property. Such management contract shall be subject to Lender's prior written consent, not to be unreasonably withheld. From and after the Completion, Borrower shall not change (or permit to be changed) the Property manager or amend or terminate the management contract (or permit any of the foregoing) for the Property without Lender's prior written consent, which shall not be unreasonably withheld. Any management agreement entered into with respect to the Property shall provide Owner with the right to terminate such management agreement after the occurrence of an Event of Default, without any penalty or fee (other than accrued and unpaid fees thereunder), upon the earlier of thirty (30) days' prior written notice or the effective date of any new management agreement with a new manager entered into in accordance with the terms hereof. Upon the occurrence of an Event of Default, if requested by Lender in writing (a **"Lender Termination Request"**), Borrower shall cause Owner to issue within five (5) days after delivery of the Lender Termination Request, a notice of termination to terminate the management agreement (a **"Manager Termination Notice"**). Notwithstanding the foregoing, if a manager is an Affiliate of Borrower or any other Loan Party, Lender's delivery to Borrower of a Lender Termination Request after an Event of Default exists shall automatically terminate the management agreement effective as of the date specified in the Lender Termination Request so long as permitted by the Senior Loan Documents. If the manager is not an Affiliate of Borrower or any other Loan Party, unless prohibited by Senior Lender, Borrower shall cause Owner to appoint a replacement manager satisfactory to Lender and Senior Lender pursuant to a new management agreement within thirty-five (35) days after delivery of such Lender Termination Request, and shall cause such manager to execute and deliver to Lender a subordination of management agreement satisfactory to Lender. If Borrower fails to issue the Manager Termination Notice within said five (5) day period, then Lender shall have the right, and Borrower hereby irrevocably authorizes Lender and irrevocably appoints Lender as Borrower's attorney-in-fact coupled with an interest, at Lender's sole option, to issue a Manager Termination Notice on behalf of and in the name of Borrower unless prohibited by Senior Lender, and Borrower hereby releases and waives any claims against Lender arising out of Lender's exercise of such authority. Notwithstanding the foregoing, all of the terms contained in this Section 5.10 shall be subject to (i) the terms of applicable condominium laws and (ii) rights of the Senior Lender.

5.11    **Inspection.** Lender and its authorized agents may enter upon and inspect the Property at all reasonable times upon notice given orally or in writing. Lender, at Borrower's expense, shall retain Lender's Consultant to periodically inspect the progress of construction of the Property and all documents, drawings, plans, and consultants' reports relating thereto. Lender shall have the right (i) to discuss and provide advice with respect to the Property with Borrower's and Owner's officers, employees, directors and agents and the right to consult with and advise Borrower's and Owner's senior management on matters materially affecting the Property, and (ii) to submit business proposals or suggestions relating to the Property to

32

Borrower's and Owner's senior management from time to time with the requirement that one or more members of Borrower's and Owner's senior management discuss such proposals or suggestions with Lender within a reasonable period after such submission and the right to call a meeting with Borrower's and Owner's senior management in order to discuss such proposals or suggestions. Borrower agrees that it will give and cause Owner to give due consideration to such input as may be provided by Lender from time to time.

5.12    **Books and Records/Audits.** Borrower shall keep and maintain at all times at Borrower's address stated below, or such other place Borrower identifies in written notice to Lender, complete and accurate books of accounts and records adequate to reflect the results of the operation of the Property and agrees to provide to Lender the financial statements required to be provided to Lender pursuant to Section 5.13 of this Agreement and, upon Lender's request, copies of all written contracts, correspondence, reports of Senior Lender's independent consultant (if received by Owner or Borrower), the Construction Documents and other documents affecting the Property. Lender and its designated agents shall have the right to inspect and copy any of the foregoing. Additionally, Lender may audit and determine, in Lender's reasonable discretion, the accuracy of Borrower's records and computations. If an Event of Default has occurred prior to any such audit, Borrower shall pay all reasonable expenses of any such audit, which expenses shall be immediately due and payable with interest thereon at the default rate contained in the Note. If any such audit reveals that any such book, record or statement is incomplete or inaccurate in any material respect as determined in Lender's reasonable discretion or that an Event of Default has occurred hereunder, then Borrower shall also pay all reasonable expenses of any such audit, which expenses shall be immediately due and payable with interest thereon at the default rate contained in the Note.

5.13    **Financial Statements; Balance Sheets.** Borrower shall furnish to Lender the following financial statements:

(a)    Annual financial statements that accurately and fairly present the results of operations and the financial condition, including statements that show all material contingent liabilities, of each of Borrower and Owner at the dates and for the periods indicated and other financial information as Lender may from time to time reasonably request; and

(b)    Following Completion, statements of the operation of the Property (including with respect to the retail space, a current rent roll, monthly operating statements, monthly delinquency reports and a monthly schedule of delinquency of receipts and payments) as of the last day of each month, to be delivered within twenty (20) days after the end of each month, and yearly statements as of the last day of each fiscal year, to be delivered within ninety (90) days after the end of each fiscal year.

The annual statements required above shall be reviewed by independent certified accountants approved by Lender and be accompanied by a statement from such accountant that no irregularities, which would make such statements materially misleading, were noted. In addition, all of the statements required hereinabove shall be accompanied by a certificate of Borrower and Owner signed by a duly authorized financial officer stating on behalf of Borrower and Owner

33

that such statements (i) are true, correct and complete in all material respects, (ii) are prepared on a modified cash basis, and (iii) fairly present the financial conditions of the Persons referred to therein as of the dates indicated. If Borrower fails to furnish or cause to be furnished promptly any report required by this Section 5.13, or if Lender reasonably deems such reports to be unacceptable, Lender may elect (in addition to exercising any other right and remedy) to conduct an audit of all books and records of Borrower and Owner which in any way pertain to the Property or the Collateral and to prepare the statement or statements which Borrower failed to procure and deliver. Such audit shall be made and such statement or statements shall be prepared by an independent firm of certified public accountants to be selected by Lender. If an Event of Default shall have occurred prior to such audit, Borrower shall pay all reasonable expenses of the audit and other services, which expenses shall be immediately due and payable with interest thereon at the default rate contained in the Note. If any such audit reveals that any such book or record is incomplete or inaccurate in any material respect as determined in Lender's reasonable discretion or that an Event of Default has occurred hereunder, then Borrower shall also pay all reasonable expenses of any such audit, which expenses shall be immediately due and payable with interest thereon at the default rate contained in the Note

    5.14   **Additional Reporting Requirements**. Except as otherwise approved by Lender, Borrower shall also furnish to Lender:

    (a)    By the twentieth day of each month following the first month after a Qualified Sale Contract is executed, monthly reports certifying the number of Qualified Sale Contracts outstanding as of the last day of the preceding month; the names and addresses of the purchasers thereunder; the sales price (itemizing any portion of the Sale price attributable to upgrades, extras and options); the Unit under contract; the aggregate amount of earnest money deposited pursuant to each such Qualified Sale Contract into the escrow account maintained for such purpose, whether there are any defaults by Owner or, to Owner's or Borrower's knowledge, the purchaser under any such Qualified Sale Contract and whether, to Owner's or Borrower's knowledge, any event has occurred or is likely to occur which would cause a default to occur or give the purchaser a right to terminate or rescind its obligations thereunder; the number of Unit sales closed; the number and designation of the Units conveyed; the price paid for each such Unit and the amount of Net Sales Proceeds applied to repayment of the Senior Loan or the Loan; and the reports and matters set forth at (c) below;

    (b)    On the first day of each week, a report on sales, leasing of Units and other marketing activity at the Property in such detail as may be reasonably required by Lender;

    (c)    Within twenty (20) days following the last day of each calendar quarter (and at such other times as Lender may reasonably request), a list of all earnest money deposits under Qualified Sale Contracts and any other deposits, if any, made and disbursed from Borrower's deposit accounts;

    (d)    A copy of each material report, statement, certification, claim, data, notice or other communication received, made or delivered by Borrower,

Owner or a purchaser under a Qualified Sale Contract that relates to events that may materially affect Borrower's, Owner's or such purchaser's obligations and/or performance under the terms of a Qualified Sale Contract or Borrower's, any other Loan Party's or any Affiliate of the foregoing obligations and/or performance under the Loan Documents or any Qualified Sale Contract, including the imposition of any penalties or damages, the exercise of any termination or cancellation rights, the filing of any dispute or litigation or the failure of Borrower, any other Loan Party or such purchaser to comply with any of the requirements of a Qualified Sale Contract. Any of the foregoing which affects the Qualified Sale Contracts or a material portion thereof shall be supplied by Borrower to Lender within five (5) days of occurrence or receipt; and

(e)    Upon the request of Lender at reasonable times and intervals in light of Borrower's normal business operations, such other information concerning the general status of Borrower's and Owner's business, financial condition and operations relating to the Property but only the extent such information is reasonably available to Borrower and in a format consistent with how Borrower maintains such information.

5.15    <u>Use of Loan and Senior Loan Proceeds; Distribution and Use of Cash Flow</u>.

(a)    No portion of the proceeds of the Loan or the Senior Loan shall be used by Borrower or Owner in any manner that might cause the borrowing or the application of such proceeds to violate Regulation G, Regulation U, Regulation T or Regulation X or any other regulation of the Board of Governors of the Federal Reserve System or to violate the Securities Act of 1933 or the Securities Exchange Act of 1934.

(b)    Borrower shall apply and shall cause Owner to apply all Proceeds in accordance with <u>Section 2.6</u> and thereafter to pay bona fide reasonable and customary Property expenses approved by Lender, including any other amounts due to Lender pursuant to the Loan Documents. Except as set forth in <u>Section 2.6.1</u>, no Proceeds shall be retained by, distributed or paid to the holders of any direct or indirect interests in Borrower, Owner or of any of their Affiliates or applied to the payment of any obligations, debts or expenses which are not customary and reasonable expenses incurred in connection with the ownership and operation of the Property, until the Senior Loan and the Loan have been repaid in full. Borrower shall not make and shall not permit Owner to make any loans to any party without the prior written consent of Lender. In the event that any Proceeds are not immediately applied to pay outstanding amounts under the Senior Loan and this Loan, any such Proceeds shall be deposited into an account in which the Lender has a security interest, such security interest to be subordinate to that of the Senior Lender.

35

5.16    **Notice of Litigation, Default or Equity Contribution.**  Borrower shall promptly provide Lender with:

(a)    written notice of any litigation, arbitration, or other proceeding or governmental investigation pending or, to Borrower's knowledge, threatened against or relating to Borrower, Owner, the Collateral or the Property, which if decided adversely could reasonably be expected to materially adversely affect the business, affairs, assets or financial condition of Borrower, Owner, the Property, the Collateral, the lien or the priority of the Pledge Agreement or the other Loan Documents, the prospects for repayment of the Loan or the performance of any other obligations of any of the Loan Parties under any of the Loan Documents;

(b)    a copy of all notices of default and violations of Laws received by Borrower or any of the other Loan Parties relating to the Collateral or the Property; and

(c)    written notice of any capital or other equity contributions to Borrower.

5.17    **Affiliate Transactions.**  Except as set forth on Schedule 5.17, Borrower shall not enter into or permit Owner to enter into any agreement with any Loan Party or any Affiliate of any Loan Party or, except as permitted in Section 2.6.1, make any payment to any Loan Party or any such Affiliate, in each case without the prior written consent of Lender, which consent shall not be unreasonably withheld or delayed.  If requested by Lender, such agreement shall provide Lender the right to terminate the same upon the occurrence of an Event of Default.

5.18    **No Commingling of Funds.**  Borrower shall not commingle (and shall not permit to be commingled) the funds related to the Property with funds from any other property or source.

5.19    **Existence; Compliance with Legal Requirements.**  Borrower shall, and shall cause Owner to, do or cause to be done all things necessary to preserve, renew and keep in full force and effect its existence, and material rights, Permits and franchises and to comply in all material respects with all Laws.

5.20    **Change in Business.**  Borrower shall not conduct and shall not permit Owner to conduct any business other than the construction, development and ownership of the Property. Borrower shall not make any change or permit Owner to make any change in the scope or nature of its business objectives, purposes or operations, or State of its organization, or undertake or participate in activities other than the continuance of its present business, without in each case Lender's prior written consent.  Without limiting the foregoing, Borrower shall not conduct its business in a manner that would cause the representations in Section 4.19 to fail to be true and correct on a continuing basis.  If Borrower requests Lender's consent to change the location of Borrower's or Owner's State of organization, Borrower shall deliver a written request to Lender at least thirty (30) days in advance, together with UCC financing statements for filing in the jurisdiction(s) in which Borrower or Owner desires to be organized, together with a legal opinion

073449.159058 DGM LIBD/1687331.11                                      10/07/05 11:35 am

that the filing of such financing statements in such jurisdictions will maintain the priority of Lender's perfected security interest in the Collateral.

5.21    **No Amendments of Organizational Documents.**  Borrower shall not, without Lender's prior written consent in each instance, suffer or permit the amendment, modification or termination of Borrower's Organizational Documents or the organizational documents of Owner, except to the extent necessary to implement any Transfers not prohibited by the Loan Documents.  Borrower will not change its name or permit Owner to change its name in any manner which might make any financing or continuation statement filed in connection with the Loan Documents misleading unless Borrower shall have given Lender at least thirty (30) days prior written notice thereof and shall have taken all action (or made arrangements to take such action substantially simultaneously with such change if it is impossible to take such action in advance) necessary or reasonably requested by Lender to amend such financing statement or continuation statement so that it is not misleading.

5.22    **Transfers of the Property or Beneficial Interests in Borrower.**  Without the approval of Lender, Borrower shall not Transfer or permit to be Transferred all or any part of the Property or any direct or indirect interest therein, except (i) for sales of residential and retail Units and parking and storage spaces on terms consistent with Sections 2.6 and 2.10, (ii) for Leases approved by Lender, and (iii) for liens and encumbrances created by the Senior Loan Documents and liens being contested to the extent permitted in, and in accordance with the terms of, this Agreement.  Without the approval of Lender, neither Borrower nor any other Loan Party shall, directly or indirectly, (a) create or permit the creation of any new ownership interest in Borrower, Owner, General Partner or General Partner's General Partner, or (b) Transfer or permit the Transfer of, directly or indirectly all or any ownership interests in Borrower, Owner, General Partner or General Partner's General Partner (including any interest in profits, losses or cash distributions), except for Permitted Transfers.  Notwithstanding anything to the contrary contained herein, one (1) or more of J. Ronald Terwilliger, William C. MacDonald, Joseph S. Torg and Timothy O'Connor shall at all times have control of Borrower, subject to such rights on the part of Limited Partner to approve certain specified actions as exist as of the date of this Agreement, and one (1) or more of Guarantors (or their transferees pursuant to subsection (i) - (iii) below) shall at all times own not less than eighty percent (80%) of the legal and beneficial interests in General Partner and General Partner shall at all times own not less than fifty percent (50%) of the legal and beneficial interests in Borrower.  As used herein, **"Permitted Transfers"** shall be any of the following Transfers: (i) Transfers to Immediate Family Members of Persons who, prior to the Transfer, hold an interest in Borrower, (ii) Transfers to any Person who, as of the date hereof, holds an interest in Borrower, and (iii) Transfers to any individual who is an active participant in the Trammel Crow Residential business, in each of the foregoing cases listed in items (i) through (iii) of this sentence, if and so long as copies of any and all documents evidencing any such Transfer, including a statement detailing the action and a listing of reallocations and percentages of ownership interests in Borrower, are provided to Lender within five (5) days following Lender's request therefor.

5.23    **No Additional Liens or Encumbrances.**  None of the Loan Parties shall grant or permit the filing of any lien or encumbrance on the Property or the Collateral, other than the encumbrances on the Property created by the Senior Loan Documents and the Encumbrances, without the prior written consent of Lender; provided, however, Borrower may or may permit

37

Owner to, by appropriate proceeding, contest the validity or amount of any asserted lien and, pending such contest, Borrower shall not be deemed to be in default hereunder if (a) Borrower has given prior written notice to Lender of Borrower's intent to so contest or cause such contest, (b) such contest stays the enforcement of the contested lien, (c) Borrower or Owner is permitted to contest such lien under the Senior Loan Documents, and (d) the contested lien is bonded or insured over by the Title Company or Borrower or Owner has posted security therefor in accordance with the provisions of the Senior Loan Documents and in a manner acceptable to Lender.

5.24    **No Additional Indebtedness.**  Except as expressly permitted under this Agreement, Borrower shall not, without Lender's prior written consent, incur or permit Owner to incur additional indebtedness, except for trade payables in the ordinary course of business and obligations under interest rate hedges related to the Senior Loan.

5.25    **Nonexempt ERISA Transactions.**  Borrower shall not engage and shall not permit any other Loan Party to engage in any nonexempt prohibited transaction described in Section 406 of ERISA or Section 4975 of the Code, as such sections relate to Borrower and Owner, or in any transaction that would cause any obligation or action taken or to be taken hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement, or any other Loan Document) to be a non-exempt prohibited transaction under ERISA.

5.26    **Plan Assets.**  Borrower will do, or cause to be done, all things necessary to ensure that neither it nor Owner will be deemed to hold Plan Assets at any time.

5.27    **Lender's Attorneys' Fees and Expenses.**  If at any time hereafter prior to repayment of the Loan in full (i) upon a default or upon Lender's reasonable anticipation of a default, Lender employs counsel for advice or other representation (whether or not any such suit has been or shall be filed and whether or not other legal proceedings have been or shall be instituted and, if such suit is filed or legal proceedings instituted, through all administrative, trial, and appellate levels) with respect to the Loan, the Property, the Collateral or any part thereof, this Agreement or any of the other Loan Documents, including any proposed or actual restructuring of the Loan, or to protect, collect, sell, take possession of, or liquidate the Collateral or any part thereof, or to attempt to enforce any security interest or lien on any part of the Collateral, or to evaluate, analyze or enforce any rights of Lender or any of Borrower's obligations hereunder or those of any other Person which may be obligated to Lender by virtue of this Agreement or any other Loan Document, or (ii) Lender employs counsel to analyze and respond to any request for consent or approval made by any Loan Party, then, in any such event, all of the reasonable attorneys' fees and expenses arising from such services, and all reasonable expenses, costs and charges relating thereto, shall be paid by Borrower on demand and if Borrower fails to pay such fees, costs and expenses payment thereof by Lender shall be deemed to constitute disbursement of the proceeds of the Loan hereunder (even if the total amount of disbursements would exceed the face amount of the Note) and shall constitute additional indebtedness of Borrower to Lender, payable on demand and secured by the Pledge Agreement and the other Loan Documents.

5.28    **Loan Expenses.**  Borrower agrees to pay all Costs incurred by Lender within ten (10) days after demand.  All Costs shall be Borrower's obligation regardless of whether the Loan is disbursed in whole or in part unless such failure to disburse is due to Lender's wrongful failure

to disburse hereunder. Any and all advances or payments made by Lender under this Agreement from time to time, or for Costs, shall, as and when advanced or incurred by Lender, constitute additional Indebtedness evidenced by the Note and secured by the Pledge Agreement and the other Loan Documents to the same extent and effect as if the terms and provisions of this Agreement were set forth therein, whether or not the aggregate of such indebtedness shall exceed the aggregate face amount of the Note.

5.29    **Indemnity.** Borrower shall indemnify, protect, hold harmless and defend Lender, its shareholders, directors, officers, employees, and agents and their respective successors and assigns from and against any and all Losses arising out of or in connection with (a) any claim by any purchaser of a Unit or the Association relating to or arising from the offer for sale or sale of Units, including (i) claims alleging any defect in any portion of the Project, including any common area or any Unit, and (ii) any non-compliance with any applicable law or any alleged breach of any warranty, promise or obligation of any kind whatsoever (whether express, implied, created by law or otherwise) relating directly or indirectly to any such offer or sale, of any Unit, (b) without limiting the terms of item (a) of this Section, the Property, (c) the Collateral (except based solely on diminutions in value), (d) the Loan Documents, (e) any violation of Laws by any Loan Party, (f) any act or omission of Borrower, any other Loan Party, or their respective employees or agents, whether actual or alleged, (g) any and all brokers' commissions or other costs of similar type by any party (except Lender or its Affiliates) in connection with the Loan, in each case except to the extent (i) arising from any such indemnitee's gross negligence or willful misconduct or (ii) arising out of or related to actions after Lender or any of its Affiliates takes control of the Property or the Collateral or (h) arising out of or attributable to any past, present or future non-compliance with the ADA. Upon written request by an indemnitee, Borrower will undertake, at its own costs and expense, on behalf of such indemnitee, using counsel reasonably satisfactory to the indemnitee, the defense of any legal action or proceeding for which Borrower is obliged to provide indemnity under this Section 5.29. Borrower's obligations are conditioned on the indemnitee notifying Borrower of the applicable claim against the indemnitee upon written notice of such claim and cooperating with Borrower in the defense of such claim, but failure to notify Borrower or to cooperate in the defense shall excuse Borrower from its obligations only to the extent Borrower or Lender is prejudiced by such failure. At Lender's option, Lender may, at Borrower's expense, prosecute or defend any action involving the priority, validity or enforceability of the Pledge Agreement or any of the other Loan Documents. Borrower's indemnification set forth in this Section 5.29 shall survive the repayment in full of the Loan.

5.30    **Documents of Further Assurance.** Borrower shall, and shall cause the other Loan Parties to, from time to time, upon Lender's request, execute, deliver, record and furnish such documents as Lender may reasonably deem necessary or desirable to (a) perfect and maintain perfected as valid liens upon the Collateral and the liens granted by Borrower to Lender under the Pledge Agreement and the other Loan Documents as contemplated by this Agreement, (b) correct any errors of a typographical nature or inconsistencies which may be contained in any of the Loan Documents, and (c) consummate fully the transaction contemplated by this Agreement.

5.31    **Survival of Representations and Warranties.** Borrower agrees that all of its representations and warranties set forth in Article 4 and elsewhere in this Agreement will be true

at the Loan Opening Date and, subject to the terms of <u>Article 4</u>, at all times thereafter. Each request for disbursement of the Loan shall constitute a reaffirmation that such representations and warranties (other than those stated to be as of the date of this Agreement) as deemed modified in accordance with the disclosures made in writing to and approved by Lender remain true and correct in all material respects, as of the date of such request and disbursement. At Lender's request, Borrower shall reaffirm such representations and warranties as are required by this <u>Section 5.31</u> in writing prior to any disbursement hereunder.

5.32    **Construction Documents; Change Orders.**  Borrower shall not, without the prior written consent of Lender, (a) enter into or permit Owner to enter into any Construction Documents, or (b) amend, modify, or waive or permit Owner to amend, modify or waiver any material provision of any Construction Documents except by Permitted Change Orders. Borrower shall provide to Lender within five (5) business days after Borrower's or Owner's receipt thereof copies of all Construction Documents or any amendments to or modifications of any Construction Documents. Notwithstanding the foregoing, provided there is no Event of Default existing, Borrower may re-allocate the Contingency Fund for Hard Costs without the Lender's consent (but only, with respect to the Contingency Fund for Hard Costs set forth in the Construction Budget) up to an amount equal to fifty percent (50%) of that portion of the initial amount allocated to the Contingency Fund for Hard Costs set forth in the Construction Budget, which portion bears the same relation to the entire initial amount allocated to the Contingency Fund for Hard Costs in the Construction Budget as the portion of the costs then expended to date for the Improvements bears to the entire amount for the Completion of the Improvements set forth in the Construction Budget; provided that Contingency Fund for Hard Costs shall be re-allocated only to Budget Line Items for Hard Costs, and shall not be allocated to any Budget Line Items for Soft Costs without the prior consent of the Lender which may be granted or withheld in its sole and absolute discretion. Provided there is no Event of Default existing, Borrower may (i) with the Lender's consent (not to be unreasonably withheld) re-allocate the Contingency Fund for Soft Costs up to an amount equal to sixty-five percent (65%) of the initial amount allocated to the Contingency Fund for Soft Costs, and (ii) without the Lender's consent re-allocate that portion of the remaining thirty-five percent (35%) of the initial amount allocated to the Contingency Fund for Soft Costs, which bears the same relation to the entire initial amount allocated to the Contingency Fund for Soft Costs in the Construction Budget as the portion of the Construction Budget then expended to date for the Improvements bears to the entire amount for the Completion of the Improvements set forth in the Construction Budget.

5.33    **Transfer and Other Taxes.**  Borrower shall indemnify, protect, hold harmless and defend Lender, its shareholders, directors, officers, employees, and agents and their respective successors and assigns from and against all Losses that Lender may incur, directly or indirectly in connection with any transfer, deed, mortgage or other tax imposed in connection with (a) Lender's acquisition of the beneficial interests in Borrower as a result of the exercise of any remedies under the Pledge Agreement, and (b) Lender's purchase of the Senior Loan pursuant to the terms of the Intercreditor Agreement.

5.34    **Construction Reporting.**  Borrower shall provide to Lender within five (5) business days of Lender's request therefore copies of any and all inspection reports and violation notices with respect to compliance of the Property with applicable Laws. In addition, Borrower shall make available to Lender for inspection and copying at any time upon reasonable written

40

notice, during reasonable business hours and at a mutually convenient location all lien waivers, sworn statements, invoices, certifications and other documentation supporting Borrower's requests for disbursements hereunder or otherwise relating to the Property and not otherwise delivered to Lender under this Agreement.

5.35    **Construction of Property.**

(a)     Borrower shall cause Owner to commence construction of the Property no later than October 30, 2005, and achieve Completion on or before the Required Completion Date. Borrower shall cause Owner to Complete the Improvements in substantial accordance with the Construction Documents in a good and workmanlike manner free of material defects on or before the Required Completion Date, and thereafter shall diligently proceed with completion of any Punchlist Items.

(b)     Within 30 days after Completion, Borrower shall furnish Lender two (2) copies of a survey of the completed Property prepared by a registered land surveyor in accordance with the 1999 Minimum Standard Detail Requirements for ALTA/ASCM Land Title Surveys, including Items 1, 2, 3, 4, 6, 7(a), 7(b1) 7(c), 8, 9, 10, 11, 12, 14, 15 and 16 in Table A thereof, and certified in favor of Borrower, Lender and the Title Company by certification in form like the pre-construction survey delivered to Lender or otherwise reasonably acceptable to Lender.

(c)     In the event that any temporary certificate of occupancy for the Property has been issued and delivered to Borrower or Owner, Borrower or Owner shall receive, within one (1) year after the Initial TCO Date, a final permanent certificate of occupancy for the Property which permits the Property to be used for its intended purpose and in compliance with all Laws; provided, however, that such one (1) year period shall be extended as to any temporary certificate of occupancy for a Unit when completion of the work necessary for the issuance of a final permanent certificate of occupancy is work necessary to complete upgrades based on selections made by the purchaser after a date that is too late to effect such work within such one (1) year period, as provided in the applicable Qualified Sales Contract.

5.36    **Contracts for Sale of Units.** Without the prior written consent of Lender, Borrower (i) shall not enter into or at any time be a party to (or permit Owner to enter into or at any time be a party to) any contract to sell any Unit other than a Qualified Sale Contract, (ii) shall at all times cause Owner to duly perform and observe all of the terms, provisions, conditions and agreements on Owner's part to be performed and observed under any and all contracts for the sale of any Units, and shall not suffer or permit any event of default to exist thereunder on the part of Owner; and (iii) shall not agree to consent to, or suffer or permit, (A) any modification or amendment of any contract for the sale of a Unit that would cause such contract to fail to satisfy any of the requirements of the definition of the term "Qualified Sale Contract" in this Agreement, including by directly or indirectly reducing the sale price under such contract to an amount, such that the reduced price, when added to the base sale price of all

41

other Units previously sold or then subject to a Qualified Sale Contract, is less than the Minimum Sales Price (as set forth in Exhibit C to this Agreement) for all such Units, or (B) any other material modification or amendment of any contract for the sale of a Unit that would adversely affect Lender. In addition to the foregoing, following an Event of Default hereunder, Borrower, shall not agree to consent to, or suffer or permit any modification or amendment of any contract for the sale of a Unit that would adversely affect Lender, in each case without the prior written consent of Lender, which consent may be withheld in Lender's sole discretion.

5.37    **Condominium Covenants.**  Borrower shall not enter into the Declaration or any other Constituent Documents without the prior written consent of Lender, which consent will not be unreasonably withheld or delayed. Prior to the recordation of the Constituent Documents, Lender shall have received and approved the form of condominium endorsement to the Title Insurance Policy, which endorsement affirmatively insures the validity of the condominium after the recordation of Constituent Documents. Upon the recordation of the Constituent Documents, Borrower shall provide Lender evidence of the issuance of such condominium endorsement. Such endorsement shall be in form and substance satisfactory to Lender.

5.37.1  From and after the time the Property is converted to a condominium form of ownership, Borrower covenants and agrees to perform the following covenants:

(a)      Condominium Obligations.  Borrower shall perform or cause to be performed all of Borrower's and Owner's obligations under the Constituent Documents and, for so long as Owner controls the Association, all of the obligations of the condominium association established pursuant to the Declaration ("**Association**") under the Constituent Documents. Borrower shall not suffer or consent to the amendment of any of the Constituent Documents without the prior written consent of Lender. Borrower shall promptly pay when due or cause Owner to pay when due, all dues and assessments imposed pursuant to the Constituent Documents on Borrower or Owner.

(b)      Board of Managers.  Subject to the rights of Senior Lender under the Senior Loan Documents and the Intercreditor Agreement, Borrower shall have caused to be duly executed and delivered to Lender and Senior Lender conditional resignations of the officers and members of the Board(s) of Managers of the applicable Association(s) to the extent elected, appointed or controlled by Borrower, Owner, any Guarantor or any Affiliate of any of the foregoing.

(c)      Hazard Insurance.  So long as the Association maintains with a generally accepted insurance carrier, a "master" or "blanket" policy on the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires under this Agreement, including fire and hazards included within the term "extended coverage", Borrower's obligation under this Agreement to maintain or cause to be maintained hazard insurance coverage on the Property shall be satisfied to the extent that the required coverage is provided by the Association. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy. In the event of an insured casualty to all

42

or a portion of the Property, insurance proceeds from insurance maintained by the Association shall be distributed and utilized in the manner required by the Constituent Documents. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the Unit(s) or to common elements, any proceeds received by Owner or Borrower shall be paid in the manner set forth in Article 7.

(d)    Sales of Units. Borrower shall and shall cause Owner to comply with the requirements of all applicable Laws in connection with the sale of Units.

5.38    **Sale of Retail Space.** Borrower shall have the right to sell retail Units without Lender's prior consent.

5.39    **Lender's Consultant.** Borrower acknowledges that (i) Lender shall be entitled to retain from time to time at Borrower's sole cost and expense, a construction manager or consultant ("**Lender's Consultant**") to act as a consultant and only as a consultant to Lender in connection with the Improvements and work contemplated in the Construction Budget, (ii) Lender's Consultant shall in no event or under any circumstance have any power or authority to make any decision or to give any approval or consent or to do any other act or thing which is binding upon Lender and any such purported decision, approval, consent, act or thing by Lender's Consultant on behalf of Lender shall be void and of no force or effect, (iii) Lender reserves the right to make any and all decisions required to be made by Lender under this Agreement and to give or refrain from giving any and all consents or approvals required to be given by Lender under this Agreement and to accept or not accept any matter or thing required to be accepted by Lender under this Agreement, in each instance, unless otherwise expressly provided, in its reasonable discretion, and without in any instance being bound or limited in any manner or under any circumstance whatsoever by any opinion expressed or not expressed, or advice given or not given, or information, certificate or report provided or not provided, by Lender's Consultant to Lender or any other person or party with respect thereto, (iv) Lender reserves the right in its sole and absolute discretion to disregard or disagree, in whole or in part, with any opinion expressed, advice given or information, certificate or report furnished or provided by Lender's Consultant to Lender or any other person or party, and (v) Lender reserves the right in its sole and absolute discretion to replace Lender's Consultant with another construction consultant at any time and without prior notice to or approval by Borrower. Borrower shall cooperate with and cause Owner to cooperate with Lender's Consultant and use all commercially reasonable efforts to ensure that Lender's Consultant can inspect the Property and the work being performed thereat at such times as Lender's Consultant may reasonably request from time to time.

5.40    **Patriot Act.** None of Borrower, Owner, or any Guarantor, or, to the best of Borrower's knowledge, any of their respective Affiliates, brokers or agents, is a Prohibited Person. None of Borrower, Owner, or any Guarantor or, to the best of Borrower's knowledge, any of their respective Affiliates, brokers or agents, (i)has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person; (ii) has dealt or will deal in, or otherwise has engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the

43

Executive Order; or (iii) has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in the Executive Order (as defined below) or the Patriot Act. Borrower covenants and agrees to deliver to Lender any certification or other evidence requested from time to time by Lender in its sole discretion, confirming Borrower's, Owner's, each Guarantor's, and to the best of Borrower's knowledge, any of their respective affiliates', brokers' and agents' compliance with this Section 5.40. The term "**Prohibited Person**" shall mean any Person:

    (i)    listed in the annex to, or Borrower knows to be otherwise subject to the provisions of, Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (the "Executive Order");

    (ii)    that Borrower knows to be owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the annex to, or is otherwise subject to the provisions, of the Executive Order;

    (iii)    that Borrower knows to be a Person with whom a Person is prohibited from dealing or otherwise engaging in any transaction by any terrorism or money laundering Law, including the Executive Order;

    (iv)    that Borrower knows to be a Person who commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order; or

    (v)    that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website or at any replacement website or other replacement official publication of such list.

    5.41    **Transfers of Senior Loan**. With respect to any transfer of the Senior Loan by Senior Lender, Borrower shall not consent and shall not permit Owner to consent to any such transfer requiring Borrower's or Owner's consent without the prior written consent of Lender, which consent shall not be unreasonably withheld or delayed.

    5.42    **Unit Sales**. In connection with the sale of any Unit, Borrower shall comply and shall cause Owner to comply with all applicable Laws, including the Interstate Land Sales Full Disclosure Act, as amended.

    5.43    **Compliance with ADA**. Borrower covenants and agrees that (a) the Property shall at all times comply with all requirements of the ADA, (b) Borrower shall, at its sole cost and expense, cause Owner to comply with all reasonable written requests of Lender to (i) effectuate compliance with the ADA and (ii) comply with any directive from any governmental authority relating to ADA compliance and (c) Borrower shall immediately notify Lender in writing of (i) any non-compliance with the ADA related in any way to the Property and (ii) any written or oral notice or other communication of which Borrower, Owner or any Guarantor becomes aware from any source whatsoever (including a governmental entity) relating in any way to the ADA or compliance therewith, possible liability of any Person pursuant to the

ADA with respect to the Property, or any actual or potential administrative or judicial proceedings with respect to the Property in connection with the ADA. In the event Lender has a reasonable basis to believe that the Property is not in compliance with the ADA, upon reasonable notice from Lender, Borrower shall, at Borrower's expense, promptly cause an engineer or consultant reasonably satisfactory to Lender to conduct any ADA assessment reasonably required by Lender (the scope of which shall be determined in the sole and absolute discretion of Lender exercising commercially reasonable judgment) and promptly deliver the results of any such assessment. Borrower shall cooperate with and provide Lender and any such Person designated by the Lender with access to the Property.

5.44    **ADA Claims**. Borrower shall immediately advise Lender in writing of: (a) any ADA Claims; and (b) the discovery by Borrower, Owner or any Guarantor of any occurrence or condition on the Property or any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be subject to any ADA Claims. Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any ADA Claims and Borrower shall pay to Lender, upon demand, all Costs incurred by Lender in connection therewith.

5.45    **Tax Parcel**. Borrower will cause the Property to be a single tax parcel and will obtain a single tax parcel endorsement to the Title Insurance Policy within thirty (30) days following receipt of the first (1st) tax bill for the Property from the City of Boston.

5.46    **Assignment of Accounts**. Borrower will cause the Owner to execute the Assignment of Accounts in the form attached hereto as Exhibit H within five (5) business days of the date upon which the Senior Loan has been repaid.

## ARTICLE 6 - SENIOR LOAN

6.1    **Compliance with Senior Loan Documents; Lender Cure.** Borrower shall, or shall cause each Loan Party, as applicable, to (a) pay all principal, interest and other sums required to be paid by it under the Senior Loan Documents; (b) diligently perform and observe (and cause each Loan Party to observe and perform) all of the terms, covenants and conditions of the Senior Loan Documents, unless such performance or observance shall be waived in writing by Senior Lender; (c) give Lender written notice of any default under the Senior Loan Documents within five (5) days of Borrower's or Owner's actual knowledge of such default and, if Borrower or Owner has received written notice of default from Senior Lender, promptly give Lender a copy of such notice; (d) promptly give Lender copies of any consents, notices, requests or other written correspondence between Borrower, Owner, any Guarantor or any Affiliate of any of the foregoing, and, in each case, Senior Lender, and copies of any financial statements and other information and reports delivered to Senior Lender; and (e) not enter into or be bound or permit the entry into or becoming bound by any agreements, documents or instruments with respect to the Senior Loan (including any amendments to or modifications of the Senior Loan Documents) except to the extent that Borrower has received Lender's prior written approval of the same or the same are otherwise permitted without Lender's consent in the Intercreditor Agreement. Without limiting the generality of the other provisions, and without waiving or releasing Borrower from any of its obligations hereunder or under any of the Loan Documents, if any default occurs under the Senior Loan Documents or if Senior Lender asserts that Borrower,

Owner or Guarantor or any Affiliate of any of the foregoing has defaulted in the performance or observance of any term, covenant or condition of the Senior Loan Documents (whether or not the same shall have continued beyond any applicable notice or grace periods, whether or not Senior Lender shall have delivered proper notice to Borrower, Owner, Guarantor or such Affiliate, and without regard to any other defenses or offset rights Borrower, Owner, Guarantor or such Affiliate of any of the foregoing may have against Senior Lender), Borrower hereby expressly agrees that Lender shall have the immediate right, without notice to or demand on Borrower, but shall be under no obligation, (i) to pay all or any part of the Senior Loan that is then due and payable and any other sums and to perform any act or take any action, on behalf of Borrower or any other Loan Party as may be appropriate to cause all of the terms, covenants and conditions of the Senior Loan Documents to be performed or observed, and (ii) to pay any other amounts due and owing to contractors or subcontractors and take any other action as Lender, in its sole and absolute discretion, shall deem advisable to pay any such amount or cure any default or the rights and interests of Lender in the Loan or the Collateral. Borrower hereby indemnifies Lender from and against all Losses which may be imposed on, incurred by, or asserted against Lender as a result of the foregoing actions. Lender shall have no obligation to Borrower or any other Person to make any such payment or performance. Borrower shall not impede, interfere with, hinder or delay, any effort or action on the part of Lender to cure any default or asserted default under the Senior Loan, or to otherwise protect or preserve the Property and Lender's interests in the Loan and the Collateral following a default or asserted default under the Senior Loan. Borrower hereby grants Lender and any Person designated by Lender the right to enter upon the Property at any time following the occurrence of any default, or the assertion by Senior Lender that a default has occurred under the Senior Loan Documents, for the purpose of taking any such action or to appear in, defend or bring any action or proceeding to protect Borrower's or Lender's interest. Lender shall have no obligation to complete any cure or attempted cure undertaken or commenced by Lender. If Senior Lender or any Loan Party shall deliver to Lender a copy of any notice of default under the Senior Loan Documents, such notice shall constitute full protection to Lender for any action taken or omitted to be taken by Lender, in good faith, in reliance thereon. As a material inducement to Lender's making the Loan, Borrower, for itself, all to the maximum extent permitted by Law all other Loan Parties and all Affiliates of all of the foregoing, hereby absolutely and unconditionally releases and waives all claims against Lender arising out of Lender's exercise of its rights and remedies provided in this <u>Section 6.1</u> or in the Intercreditor Agreement, except in the case of gross negligence or willful misconduct by Lender. Subject to the rights of Senior Lender (including pursuant to the terms of any subordination or waiver to which Lender is subject), in the event that Lender makes any payment in respect of the Senior Loan, Lender shall be subrogated to all of the rights of Senior Lender under the Senior Loan Documents against the Property, in addition to all other rights it may have under the Loan Documents. As between Lender and Senior Lender, nothing contained in this Section shall be deemed to affect any of the terms of the Intercreditor Agreement.

6.2    **Estoppels.** Borrower shall, from time to time, use its best efforts to obtain from Senior Lender such certificates of estoppel with respect to compliance by the Loan Parties with the terms of the Senior Loan Documents as may be reasonably requested by Lender. In the event or to the extent that Senior Lender is not legally obligated to deliver such certificates of estoppel and is unwilling to deliver the same, or is legally obligated to deliver such certificates of estoppel but breaches such obligation, then Borrower shall not be in breach of this provision so long as Borrower furnishes to Lender an estoppel executed by Borrower, expressly representing to

46

Lender the information requested by Lender regarding compliance by Borrower with the terms of the Senior Loan Documents. Borrower hereby indemnifies Lender from and against all Losses which may be imposed on, incurred by, or asserted against Lender based in whole or in part upon any fact, event, condition, or circumstances relating to the Senior Loan which was misrepresented in, or which warrants disclosure and was omitted from such estoppel executed by Borrower.

      6.3    **Acquisition of the Senior Loan.** None of Borrower, Owner, any Guarantor, or any Affiliate of any of the foregoing, shall acquire or agree to acquire the Senior Loan, via purchase, transfer, exchange or otherwise, and any breach or attempted breach of this provision shall constitute an immediate Event of Default. If, solely by operation of applicable subrogation law, Borrower or any such other Person shall have failed to comply with the foregoing, then Borrower (a) shall immediately notify Lender of such failure, (b) shall cause such Person and all Affiliates of such Person acquiring any interest in the Senior Loan Documents (i) not to enforce the Senior Loan Documents, and (ii) upon the request of Lender, to the extent any such Person or Affiliate has the power or authority to do so, to promptly (A) cancel the Senior Note (as defined in the Senior Loan Documents), (B) reconvey and release any collateral under the Senior Loan Documents, and (C) discontinue and terminate any enforcement proceedings under the Senior Loan Documents. Borrower hereby expressly covenants and agrees that, in the event that Lender acquires the Senior Loan and, at any time thereafter when an Event of Default shall have occurred or be continuing, then, at Lender's option, exercised in Lender's sole and absolute discretion, Lender may elect (x) to declare that the Senior Loan is in default (which default shall not be subject to any grace, notice or cure periods), and (y) to accelerate the Senior Loan.

      6.4    **Deed-in-*Lieu*.** Borrower shall not enter into or permit Owner to enter into any deed-in-*lieu* or consensual foreclosure with or for the benefit of Senior Lender. Without the express prior written consent of Lender, Borrower shall not enter into or permit Owner to enter into any consensual sale or other transaction in connection with the Senior Loan which could terminate or materially diminish, impair or otherwise adversely affect the interests of Lender in the Collateral or any portion thereof or any interest therein or interest of Borrower or Owner in the Property, any portion thereof or any interest therein.

      6.5    **Senior Loan In Balance.**

          (a)    Borrower shall not use or permit the use of any proceeds of the Senior Loan for any purpose not included in the Construction Budget.

          (b)    Borrower shall keep the Senior Loan "in balance" at all times prior to Completion. The Senior Loan is "in balance" when the remaining undisbursed proceeds of the Senior Loan (including any retainage held by Senior Lender), together with any deposits previously made by Borrower and held by Senior Lender, are sufficient to Complete the Improvements and to pay all interest, fees and charges relating to the Senior Loan (as estimated by Lender) through the Completion, including legal, architectural and engineering fees. At Lender's request, Borrower shall demonstrate to Lender's reasonable satisfaction that the Senior Loan is "in balance."

(c)    Borrower shall only use the interest reserve maintained by Senior Lender to pay debt service on the Senior Loan or for hedging costs related to the Loan and/or the Senior Loan, and for no other purpose.  If cash flow and other revenue from the Property is sufficient to pay debt service under the Senior Loan, Borrower shall pay such debt service from cash flow rather than from the interest reserve to the extent allowed by Senior Lender.  The contingency reserve maintained by Senior Lender shall only be used to pay for cost overruns of items set forth in the Construction Budget.

6.6    **Copies of Senior Loan Requests.**  Borrower shall provide Lender or at Lender's direction, Lender's Consultant, on a monthly basis, with copies of all draw requests which are provided to or for Senior Lender.  Lender reserves the right to require Borrower to notify Lender of the date, time and location of all draw request meetings so that Lender or Lender's Consultant may, at its option, attend such meetings at Borrower's expense.

6.7    **Lender's Right Not Conditioned Upon Event of Default.**  Notwithstanding anything to the contrary contained herein, the ability of Lender to exercise the rights and remedies set forth in this Article 6 shall not be conditioned upon the occurrence of an Event of Default, except to the extent expressly set forth in this Article.

### ARTICLE 7 - CASUALTY AND CONDEMNATION

7.1    **Lender's Election to Apply Insurance and Condemnation Proceeds to Indebtedness.**

(a)    In the event of any loss or damage to any portion of the Property due to fire or other casualty, or any taking of any portion of the Property either by condemnation or under power of eminent domain, where Senior Lender does not have the right to settle or compromise any insurance claims or condemnation claims (or in the event Senior Lender has such right to settle or compromise such claims but waives such right), and subject to the terms of the Constituent Documents following recordation of the Declaration, Borrower shall have the right to cause Owner to settle insurance claims and condemnation claims or awards (i) of less than $250,000 without Lender's prior consent so long as there has occurred no Event of Default, and (ii) for $250,000 or more with Lender's prior written approval, not to be unreasonably withheld or delayed.

(b)    If Senior Lender is entitled and elects to apply any insurance proceeds or condemnation award to the Senior Loan, then the balance of any such proceeds or award, as the case may be, not so applied to the Senior Loan shall be paid to Lender and applied to the Indebtedness, subject to (i) Borrower's rights under Section 7.2 and (ii) the Constituent Documents following recordation of the Declaration.  If Senior Lender makes any insurance proceeds or condemnation award available to Owner for restoration of the Property subject to the terms of the Senior Loan Documents, any portion of such proceeds or award remaining after completion of such restoration, not required to by applied to repay the Senior Loan, shall be paid to Lender and applied to the Indebtedness, subject to the

48

Constituent Documents following recordation of the Declaration. If any insurance proceeds or condemnation award is paid to Senior Lender for disbursement, Borrower shall deliver or cause Owner to deliver to Lender copies of all written correspondence delivered to and received from Senior Lender that relates to such insurance proceeds or condemnation award.

(c)    Except to the extent expressly provided to the contrary in Section 7.1(b) or Section 7.2, and subject to the terms of the Constituent Documents following recordation of the Declaration and the terms of the Senior Loan Documents in the form in which they exist as of the date hereof, any condemnation award or insurance proceeds shall, at the option of Lender, in its sole and absolute discretion, be applied to the payment of the Indebtedness or applied to reimburse Borrower or Owner for the cost of restoration of the Property in accordance with the terms of Section 7.2 of this Agreement. If Lender is entitled to and so elects to apply any insurance proceeds or condemnation award towards the Indebtedness, and if such proceeds or awards are insufficient to pay the Indebtedness in full, Lender shall be entitled to declare the balance remaining unpaid on the Note to be due and payable forthwith and to avail itself of any of the remedies afforded under any of the Loan Documents as in the case of any default beyond applicable cure periods thereunder. Any proceeds remaining after application to the Indebtedness shall be paid by Lender to Borrower or the party then entitled thereto.

7.2    **Borrower's Obligation to Rebuild and Use of Proceeds Therefor.** If any insurance or condemnation proceeds are paid to Lender and an Event of Default has not occurred, Lender shall, after deduction of all expenses of collection and settlement, including attorneys' and adjusters' fees and expenses, release periodically such insurance proceeds or condemnation award received by Lender to Borrower or Owner as long as Borrower or Owner shall:

(a)    Expeditiously repair and restore all damage to the portion of the Property resulting from such casualty or condemnation, including completion of the work contemplated as part of the Property if such casualty or condemnation shall have occurred prior to Completion, so that the Improvements will be Completed in accordance with the terms of this Agreement; and

(b)    If the insurance proceeds or condemnation award (and the undisbursed available proceeds of the Loan and the Senior Loan for work contemplated as part of the Project) are, in Lender's reasonable judgment, insufficient to complete the repair and restoration of the Property, then Borrower or Owner shall promptly deposit with Lender or Senior Lender pursuant to arrangements satisfactory to Lender the amount of such deficiency.

Any request by Borrower for a disbursement by Lender of insurance proceeds or condemnation awards and funds deposited by Borrower or Owner pursuant to this Section 7.2 and the disbursement thereof shall be conditioned upon Borrower's compliance with and satisfaction of the same conditions precedent as would be applicable in connection with construction loans

073449.159058  DGM LIBD/1687331.11    10/07/05 11:35 am

made by institutional lenders for projects similar to the Property, including absence of default, approval of plans and specifications (unless the restoration work is Completion of the Project), submittal of evidence of completion, updated title insurance, lien waivers, and other customary safeguards.

## ARTICLE 8 - EVENTS OF DEFAULT; REMEDIES

8.1    **Events of Default.** The occurrence of any one or more of the following events shall constitute an **"Event of Default"**:

(a)    Failure to of Borrower repay principal under the Note when due; or

(b)    Failure of Borrower to pay, within five (5) days of the due date, any of the Indebtedness (except for repayment of principal) or a failure by Borrower to observe or perform any obligation, covenant, condition, or agreement herein to be performed by Borrower which involves the payment of money (i) to Lender, within five (5) days following the due date and (ii) to any other Person, within five (5) days following notice thereof to Borrower; or

(c)    Failure of Borrower to comply with Sections 4.16 (ERISA); 4.19 (Single Asset Entity); 5.3 (Insurance); 5.11 (Inspection); 5.15 (Use of Loan and Senior Loan Proceeds; Distribution and Use of Cash Flow); 5.19 (Existence; Compliance with Legal Requirements); 5.20 (Change in Business); 5.21 (No Amendments of Organizational Documents); 5.22 (Transfers of the Property or Beneficial Interests in Borrower); 5.23 (No Additional Liens or Encumbrances); 5.24 (No Additional Indebtedness); 5.25 (Nonexempt ERISA Transactions); 5.26 (Plan Assets); 5.35 (Construction of Property); 6.1 (Compliance with Senior Loan Documents; Lender Cure); 6.3 (Acquisition of Senior Loan); or 6.4 (Deed-in-*Lieu*) of this Agreement, which failure is not cured by Borrower within fifteen (15) business days of the occurrence thereof; or

(d)    Breach of any covenant, representation or warranty set forth in this Agreement (other than as set forth in any other paragraphs of this Section 8.1) which is not cured within thirty (30) days after written notice thereof to Borrower from Lender; provided, however, if such breach cannot by its nature be cured within thirty (30) days, and Borrower has commenced such cure within such thirty (30) day period and, thereafter, diligently pursues the curing thereof (and then in all events cures such failure within ninety (90) days after the original notice thereof), Borrower shall not be in default hereunder; or

(e)    A petition under any chapter of the Bankruptcy Code or any similar law or regulation is filed by or against Borrower or Owner (and in the case of an involuntary petition in bankruptcy, such petition is not discharged within sixty (60) days of its filing), or a custodian, receiver or trustee for the Property is appointed, or Borrower or Owner makes an assignment for the benefit of creditors, or any of them are adjudged insolvent by any state or federal court of competent jurisdiction, or any of them admit their insolvency or inability to pay

50

their debts as they become due or an attachment or execution is levied against Borrower or Owner, the Property or the Collateral; or

(f)     Breach of any covenant, representation, or warranty in any other Loan Document which is not cured prior to the expiration of any cure period applicable thereto or, if none is specified, within thirty (30) days after written notice thereof to Borrower from Lender; provided, however, if a breach for which no other cure period is specified cannot be cured within thirty (30) days, and Borrower has commenced such cure within such thirty (30) day period and, thereafter, diligently pursues the curing thereof (and then in all events cures such failure within ninety (90) days after the original notice thereof), Borrower shall not be in default hereunder; or

(g)     The failure at any time of the Pledge Agreement to be a valid perfected first priority lien upon any of the Collateral described therein; or

(h)     (i) Borrower or Owner shall default in the payment of any indebtedness of Borrower or Owner, (ii) Borrower or Owner shall fail to cure any such default within the time, if any, specified therefor in any agreement governing the indebtedness, and (iii) the aggregate amount of all of such indebtedness under which Borrower or Owner individually has defaulted exceeds, in the aggregate, $100,000; or

(i)     Any statement, report or certificate made or delivered to Lender by any Loan Party is not materially true and complete as of the date thereof; or

(j)     The occurrence of an "Event of Default" under the Senior Loan Documents (without regard to whether Lender subsequently effectuates a cure of such default); or

(k)     If the collective aggregate value of the Available Assets of the Guarantors (calculated on the basis provided in the notes to the Estimated Collateral Value Statement dated as of June 30, 2004) falls to less than $50,000,000, unless the Guarantors correct such deficiency within thirty (30) days following the occurrence of such event. Guarantors may correct such deficiency by: (i) obtaining and delivering to Lender one or more new guaranties, each of which shall be in form and content substantially the same as the Completion Guaranty and the Carve-Out Guaranty (or in such other forms as Lender may in its good faith business judgment approve) from one or more persons whose Available Assets are sufficient to correct the deficiency, (ii) delivering to Lender and thereafter maintaining in full force and effect (for so long as the deficiency exists) an unconditional and irrevocable letter of credit, in a face amount sufficient to correct the deficiency, naming Lender as beneficiary, and otherwise in form and content and issued by an institution acceptable to Lender in the exercise of its good faith business judgment, or (iii) amending the Completion Guaranty and the Carve-Out Guaranty (in form and substance acceptable to Lender in the exercise of its good faith business judgment) in a manner such that

the definition of Available Assets is expanded to included additional assets that are sufficient to correct the deficiency and otherwise acceptable to Lender in its good faith business judgment; or

(l)    If at any time Lender or Lender's Consultant determines in its reasonable judgment that Completion cannot be achieved by the Required Completion Date.

(m)    Failure of Borrower to cause Owner to execute the Assignment of Accounts in the form attached hereto as <u>Exhibit H</u> within five (5) business days of the date upon which the Senior Loan has been repaid.

8.2    **Acceleration; Remedies.** Subject to the rights of the Senior Lender under the Intercreditor Agreement, upon the occurrence of any Event of Default, Lender shall have the right but not the obligation to pursue any one or more of the following remedies concurrently or successively, it being the intent hereof that all such remedies shall be cumulative and that no such remedy shall be to the exclusion of any other:

(a)    declare the Note to be immediately due and payable; and

(b)    institute proceeding, judicial or otherwise, for the enforcement of its rights under the Loan Documents or under any applicable provision of Law, including to dispose of all or any part of the Collateral in satisfaction of the Indebtedness; and

(c)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained in the Loan Documents; and

(d)    exercise any and all rights and remedies granted to a secured party upon default under the applicable Uniform Commercial Code; and

(e)    use and apply any monies deposited by Borrower or any other Loan Party with Lender, regardless of the purpose for which the same was deposited, to cure any such default or to apply on account of the Indebtedness; and

(f)    take any action whatever which, in Lender's sole judgment, is necessary or appropriate to fulfill the covenants, agreements and obligations of Borrower under this Agreement and the Loan Documents, including the right to (i) Complete the Improvements, (ii) avail itself of and procure performance of existing contracts and subcontracts, including the Construction Contract and all other Construction Documents, and (iii) let any contracts with the same contractors and subcontractors or others and to employ watchmen to protect the Property from injury; and

(g)    withhold further disbursement of the proceeds of the Loan; and

073449.159058 DGM LIBD/1687331.11                                    10/07/05 11:35 am