Exhibit C

HARBORVIEW POINT                                                08/31/05
Charlestown, MA

10605  06/30/05  Wire Mesh Partitions                                    4
10810  06/30/05  Toilet Accessories                                      3
10950  06/30/05  Building Specialties                                    4


## DIVISION 11:   EQUIPMENT

Section
11010  06/30/05  Window Washing Equipment                                4
11175  06/30/05  Chutes and Collectors                                   4
11450  06/30/05  Residential Equipment                                   3


## DIVISION 12:   FURNISHINGS

Section
12670  06/30/05  Entrance Mats                                           3


## DIVISION 13:   SPECIAL CONSTRUCTION


## DIVISION 14:   CONVEYING SYSTEMS

Section
14215  08/31/05  Traction Elevators                                     11


## DIVISION 15:   MECHANICAL

Section
Section
15050  06/29/05  Basic Materials, Methods and Requirements (Mechanical)  21
15055  06/29/05  Motors                                                  6
15245  06/29/05  Foundations, Vibration Isolation, & Supports for Rigidly
                 Supported Equipment (Seismic Design)                   10
15250  06/29/05  Mechanical Insulation                                  10
15260  06/29/05  Acoustic Duct Lining                                    3
15305  06/29/05  Basic Materials, Methods and Requirements (Fire Protection)  25
15310  06/29/05  Fire Protection Piping                                  13
15320  06/29/05  Fire Pumps                                              3
15330  06/29/05  Standpipe and Sprinkler Systems and Equipment           8
15405  06/29/05  Basic Materials, Methods and Requirements (Plumbing)    26
15410  06/29/05  Plumbing Piping                                         27
15440  06/29/05  Plumbing Fixtures and Equipment                        13
15450  06/29/05  Insulation for Plumbing                                 8
15486  06/29/05  Foundations, Vibration Isolation, & Supports for Rigidly
                 Supported Equipment                                     7

HARBORVIEW POINT                                                      08/31/05
Charlestown, MA

| 15500 | 06/29/05 | Heating, Ventilating & Air Conditioning | 45 |
| 15550 | 06/29/05 | Heat Generation | 6 |
| 15650 | 06/29/05 | Refrigeration | 4 |
| 15880 | 06/29/05 | Air Distribution | 26 |
| 15920 | 06/29/05 | Sound Attenuation | 3 |
| 15941 | 06/29/05 | Motor-Control Centers | 6 |
| 15942 | 06/29/05 | Variable Frecuency Controllers | 11 |
| 15950 | 06/29/05 | Controls | 30 |
| 15990 | 06/29/05 | Testing, Adjusting and Balancing | 13 |
| 15991 | 06/29/05 | Testing of Systems | 3 |
| 15995 | 06/29/05 | Special Mechanical Systems | 19 |

## DIVISION 16 - ELECTRICAL

Section
| 16050 | 06/29/05 | Basic Electrical Materials and Methods | 19 |
| 16060 | 06/29/05 | Grounding and Bonding | 9 |
| 16071 | 06/29/05 | Seismic Controls for Electrical Work | 8 |
| 16075 | 06/29/05 | Electrical Identification | 6 |
| 16080 | 06/29/05 | Electrical Testing | 2 |
| 16119 | 06/29/05 | Underground Ducts and Utility Structures | 12 |
| 16120 | 06/29/05 | Conductors and Cables | 10 |
| 16130 | 06/29/05 | Raceways and Boxes | 14 |
| 16140 | 06/29/05 | Wiring Devices | 5 |
| 16145 | 06/29/05 | Lighting Control Devices | 3 |
| 16190 | 06/29/05 | Supporting Devices | 7 |
| 16231 | 06/29/05 | Packaged Engine Generators | 17 |
| 16269 | 06/29/05 | Variable Frequency Controllers (Installation Of) | 4 |
| 16410 | 06/29/05 | Enclosed Switches and Circuit Breakers | 5 |
| 16415 | 06/29/05 | Transfer Switches | 7 |
| 16420 | 06/29/05 | Enclosed Controllers (Installation Of) | 4 |
| 16421 | 06/29/05 | Selection of Overcurrent Devices | 9 |
| 16424 | 06/29/05 | Feeders and Branch Circuitry | 5 |
| 16427 | 06/29/05 | Metering | 2 |
| 16441 | 06/29/05 | Switchboards | 11 |
| 16442 | 06/29/05 | Panelboards | 9 |
| 16443 | 06/29/05 | Motor-control Centers (Installation Of) | 3 |
| 16450 | 06/29/05 | Enclosed Bus Assemblies | 6 |
| 16461 | 06/29/05 | Dry Type Transformers (600 Volts and Less) | 5 |
| 16491 | 06/29/05 | Fuses | 3 |
| 16496 | 06/29/05 | Provisions for Elevators | 2 |
| 16500 | 06/29/05 | Lighting | 14 |
| 16670 | 06/29/05 | Lightning Protection | 4 |
| 16721 | 06/29/05 | Fire Protective Alarm System | 32 |
| 16727 | 06/29/05 | Stair Intercommunication System | 7 |
| 16728 | 06/29/05 | Fire Fighter's Communication Bi-directional Radio Amplifier (Rf Signal Booster) System | 8 |

HARBORVIEW POINT                                                    08/31/05
Charlestown, MA

17100  06/29/05    Telecommunications Cabling Systems              40

**APPENDICES**

RAM Plan

Site Investigation Report

NPDES Permit

END OF TABLE OF CONTENTS

## EXHIBIT F

## FORM OF MEZZANINE LOAN ENDORSEMENT

073449.159058  DGM  LIBD/1687331.11                    10/07/05 11:35 am

Issued by

**Chicago Title Insurance Company**                                        Endorsement

Attached to and forming a part of Policy of Title Insurance No.  2451-25246

### MEZZANINE FINANCING ENDORSEMENT

1. The Mezzanine Lender is: The Prudential Insurance Company of America, and each successor in ownership of its loan ("Mezzanine Loan") reserving, however, all rights and defenses as to any successor that the Company would have had against the Mezzanine Lender, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land.

2. The insured:

(a) assigns to the Mezzanine Lender the right to receive amounts otherwise payable to the insured under this policy, not to exceed the outstanding indebtedness under the Mezzanine Loan; and

(b) agrees that no amendment of or endorsement to this policy can be made without the written consent of the Mezzanine Lender except as provided in Section 12(a) of the Conditions and Stipulations.

3. The Company does not waive any defenses that it may have against the insured, except as expressly stated in this endorsement.

4. In the event of a loss under the policy, the Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b) or (e) to refuse payment to the Mezzanine Lender solely by reason of the action or inaction or knowledge, as of Date of Policy, of the insured, provided:

(a) the Mezzanine Lender had no knowledge of the defect, lien, encumbrance or other matter creating or causing loss on Date of Policy.

(b) this limitation on the application of Exclusions from Coverage 3(a), (b) and (e) shall:

(1) apply whether or not the Mezzanine Lender has acquired an Interest (direct or indirect) in the insured either on or

### *** CONTINUED ***

Buy/Borr: LDA Acquisition LLC
Seller:     Boston Redevelopment Authority
Lender:
Prop:      Yard's End, Charlestown, Massachusetts
             (Suffolk County)

Chicago Title Insurance Company

By _____

                                                President

Attest _____

                                                Secretary

_____
        **Authorized Signatory**

Note: This endorsement shall not be valid or binding until
countersigned by an authorized signatory.

NEWEND 9/99              DJB                                    DJB    09/29/05    17:12:54

Issued by
**Chicago Title Insurance Company**                    Endorsement (cont'd)

after Date of Policy, and

(2) benefit the Mezzanine Lender only without benefiting any other individual or entity that holds an interest (direct or indirect) in the insured or the land.

5. In the event of a loss under the Policy, the Company also agrees that it will not deny liability to the Mezzanine Lender on the ground that any or all of the ownership interests (direct or indirect) in the insured have been transferred to or acquired by the Mezzanine Lender, either on or after the Date of Policy.

6. The Mezzanine Lender acknowledges:

(a) that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy; and

(b) that the Company shall have the right to insure mortgages or other conveyances of an interest in the land, without the consent of the Mezzanine Lender.

7. If the insured, the Mezzanine Lender or others have conflicting claims to all or part of the loss payable under the Policy, the Company may interplead the amount of the loss into Court. The insured and the Mezzanine Lender shall be jointly and severally liable for the Company's reasonable cost for the interpleader and subsequent proceedings, including attorneys' fees. The Company shall be entitled to payment of the sums for which the insured and Mezzanine Lender are liable under the preceding sentence from the funds deposited into Court, and it may apply to the Court for their payment.

8. Whenever the Company has settled a claim and paid the Mezzanine Lender pursuant to this endorsement, the Company shall be subrogated and entitled to all rights and remedies that the Mezzanine Lender may have against any person or property arising from the Mezzanine Loan. However, the Company agrees with the Mezzanine Lender that it shall only exercise these rights, or any right of the Company to indemnification, against the insured, the Mezzanine Loan borrower, or any guarantors of the Mezzanine Loan after the Mezzanine Lender has recovered its principal, interest, and costs of collection.

AGREED AND CONSENTED TO:

By: _____          By: _____
        Owner                                      Mezzanine Lender

This endorsement is made a part of the commitment or policy. It is subject to all of the terms of the commitment or policy and prior endorsements. Except as expressly stated on this endorsement, the terms, dates and amount of the commitment or policy and prior endorsements are not changed.

Dated: ~

2

ENDC 6/98 SB

## EXHIBIT G

### FORM OF COMPREHENSIVE ENDORSEMENT (IMPROVED LAND)
### AND
### FORM OF ZONING 3.1 (IMPROVED LAND)

073449.159058 DGM LIBD/1687331.11                    10/07/05 11:35 am

Issued by
## Chicago Title Insurance Company                                    Endorsement

---

CODE: AL92

Attached to and forming a part of Policy of Title Insurance No. 2451-25246

DATED:

### RESTRICTIONS, ENCROACHMENTS AND MINERALS
### (Owner's Policy - Improved Land)
### ALTA 9.2

The Company insures the insured against loss or damage sustained by reason of:

1.  The existence, at Date of Policy, of any of the following unless expressly excepted in Schedule B:

    (a)  Present violations on the land of any enforceable covenants, conditions or restrictions, or any existing improvements on the land which violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

    (b)  Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant; or (iii) provides a right of reentry, possibility of reverter or right of forfeiture because of violations on the land of any enforceable covenants, conditions or restrictions.

    (c)  Any encroachment of existing Improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.

    (d)  Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

    (e)  Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2.  Damage to existing buildings:

    (a)  Which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

*** CONTINUED ***

Buy/Borr: LDA Acquisition LLC
Seller:   Boston Redevelopment Authority
Lender:
Prop:     Yard's End, Charlestown, Massachusetts
          (Suffolk County)

**SPECIMEN**

_____
Authorized Signatory
Note: This endorsement shall not be valid or binding until
countersigned by an authorized signatory.

**Chicago Title Insurance Company**

By _____
                                      President

Attest _____
                                      Secretary

*Issued by*

Chicago Title Insurance Company                                    Endorsement (cont'd)

     (b)    Resulting from the future exercise of any right existing at Date of Policy to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

3.    Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment, other than fences, landscaping or driveways, excepted in Schedule B.

4.    Any final court order or judgment denying the right to maintain any existing building on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Whenever in this endorsement the words "covenants, conditions or restrictions" apear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraph 1(a) and 4, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF, the Company has caused its corporate name and seal to be affixed hereto by its duly authorized officers.

SPECIMEN

2

*Issued by*
## Chicago Title Insurance Company                                      Endorsement

CODE: ZON1

Attached to and forming a part of Policy of Title Insurance No.  2451-25246

DATED:

### ZONING 3.1 ENDORSEMENT
### COMPLETED STRUCTURE

1.  The Company insures the insured against loss or damage sustained in the event that, at Date of Policy:

    (a)  According to applicable zoning ordinances and amendments thereto, the land is not classified Zone .

    (b)  The following use or uses are not allowed under that classification:  .

    and there shall be no liability under this paragraph 1(b) if the use or uses are not allowed as a result of any lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments thereto mentioned above, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses.

2.  The Company further insures the insured against loss or damage arising from a final decree of a court of competent jurisdiction:

    (a)  prohibiting the use of the land, with any structure presently located thereon, as insured in paragraph 1(b); or

    (b)  requiring the removal or alteration of the structure on the basis that, at Date of Policy, the ordinances and amendments thereto have been violated with respect to any of the following matters:

    (i)   Area, width or depth of the land as a building site for the structure;

    (ii)  Floor space area of the structure;

    (iii) Setback of the structure from the property lines of the land;

    (iv)  Height of the structure; or

    (v)   Number of parking spaces.

*** CONTINUED ***

Buy/ Borr: LDA Acquisition LLC
Seller:   Boston Redevelopment Authority
Lender:
Prop:     Yard's End, Charlestown, Massachusetts
          (Suffolk County)

Chicago Title Insurance Company

By

                                                    President

Attest

                                                    Secretary

_____
    Authorized Signatory
Note: This endorsement shall not be valid or binding until
countersigned by an authorized signatory.

NEND 8/00              DJB                          DJB    09/29/05    17:12:55

*Issued by*
Chicago Title Insurance Company                                    **Endorsement (cont'd)**

There shall be no liability under this endorsement based on:

(a)    The invalidity of the ordinances and amendments thereto until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses.

(b)    The refusal of any person to purchase, lease or lend money on the estate or interest covered by this policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS THEREOF, the Company has caused its corporate name and seal to be affixed hereto by its duly authorized officers.

2

ENDC 6/98 SB

## EXHIBIT H

## FORM OF ASSIGNMENT OF ACCOUNTS

073449.159058  DGM  LIBD/1687331.11                                     10/07/05 11:35 am

## ASSIGNMENT OF ACCOUNTS

This **ASSIGNMENT OF ACCOUNTS** (this **"Assignment"**) is made as of September __, _____ by NAVY YARD FOUR ASSOCIATES, LLC, a Delaware limited liability company (the "Owner"), given to **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**, a New Jersey corporation (the "Lender").

R E C I T A L S

A.    Owner is the owner of that certain real property located in Boston, Massachusetts, and more particularly described in **Exhibit A** attached hereto (such property, together with all rights and appurtenances thereto and all improvements presently located or hereafter constructed thereon, are hereinafter collectively called the **"Property"**).

B.    Owner is a wholly-owned subsidiary of Navy Yard Four Associates Limited Partnership, a Delaware limited partnership (the **"Borrower"**).

C.    Borrower and Lender have entered into that certain Loan Agreement, of even date herewith (collectively, with any amendments thereto, substitutions therefor, and modifications, renewals, and extensions thereof, the **"Loan Agreement"**). All initially capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

D.    Pursuant to the Loan Agreement, Lender agreed, subject to the terms and conditions contained therein, to make a loan (**"Loan"**) to Borrower as evidenced by that certain Promissory Note, dated September __, 2005, made by Borrower to the order of Lender in the original principal amount of $18,466,000 (collectively, with any amendments thereto, substitutions therefor, and modifications, renewals, and extensions thereof, the **"Note"**).

E.    Owner has established an account with each depository institution identified on Schedule X, attached hereto (a **"Depository Institution"**, collectively, the **Depository Institutions"**), into which Owner will deposit all deposits under contracts for the sale of Units and operating revenues or other revenues and income of any kind from the Property. Borrower has agreed that such accounts and the proceeds thereof will be pledged as further security for the Loan for the purposes and upon the terms and conditions set forth in this Assignment.

**NOW, THEREFORE**, as an inducement to Lender to continue the Loan to Borrower, and to extend such additional credit as Lender may from time to time agree to extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1.    Collateral Assignment.  Owner hereby unconditionally assigns to Lender, as security for the Indebtedness, all of Owner's right, title and interest in and to each account (each individually an **"Account"**, and collectively, the **"Accounts"**) maintained with each Depository Institution identified on Schedule 1. Owner grants Lender, its successors and assigns, as security for the Indebtedness, a lien and security interest in the Accounts, in all funds deposited or held therein from time to time, in all proceeds thereof, and in all rights and remedies of Owner under

the Accounts, to provide additional security for the Indebtedness.

Although Owner and Lender intend this to be an unconditional, present assignment of Borrower's interest in the Accounts, Lender agrees that, so long as no Default or Event of Default exists under the Loan Documents or this Assignment, Owner may continue to exercise Borrower's rights and powers in and to the Accounts pursuant and subject to the terms of the Assignment, the Loan Agreement and the other Loan Documents.

2.    Termination of Assignment.  By accepting this Assignment, Lender agrees that this Assignment, shall be null and void and of no further effect upon the payment in full of all Indebtedness of Borrower pursuant to the terms of the Loan Documents.

3.    Representations and Warranties by Owner.  In consideration of the Loan, until all Indebtedness secured by this Assignment is fully paid, Owner represents and warrants to Lender that:

(a)    There is no other assignment (absolute or conditional) of any of its rights under the Accounts, except in connection with the Senior Loan;

(b)    Owner has done no act and has not failed to do any act that might adversely affect Lender's rights under this Assignment;

(c)    The Accounts are in full force and effect, Owner knows of no default in the terms of the Accounts, except those disclosed to Lender and approved or waived by Lender, and Owner knows of no counterclaims, defenses, or setoffs to their enforcement except those disclosed to Lender and approved or waived by Lender;

(d)    Owner is not prohibited by the Accounts or any other agreement or by any judgment, order, or decree from executing and delivering this Assignment or from fully performing Owner's obligations under the Accounts and this Assignment;

(e)    No action has been brought or threatened which would interfere with Owner's right to execute this Assignment and perform all of Owner's material obligations under the Accounts and this Assignment; and

(f)    The Depository Institutions will be requested to acknowledge in writing, by execution of the form of Acknowledgement and Consent attached hereto as Exhibit B or such other written instrument reasonably acceptable to Lender, Lender's interest in the Accounts as set forth in this Assignment and  agree to waive any right of setoff such Depository Institution might otherwise have against any Account until all Indebtedness of Borrower has been fully repaid, and to perform its obligations under the Accounts for Lender, upon Lender's request (which Lender may make only when an Event of Default exists).

4.    Covenants of Owner.  Until all Indebtedness secured by this Assignment is fully paid, Owner covenants and agrees that Owner shall:

2

(a)     Perform and observe every condition and covenant required of Owner by the Accounts;

(b)     Promptly, provide Lender with a true, correct and complete copy or description of any claim against any Account;

(c)     Initiate and prosecute or appear in and defend (as appropriate under the circumstances) any action concerning any Account;

(d)     In performing and observing every condition and covenant in connection with any Account, not violate the terms of the Loan Documents;

(e)     Not modify the terms of any Account, or close any Account, or assign or pledge any interest in any Account to a person other than Lender, or waive or release Depository Institution from the performance of any obligation under any Account or from liability under any warranty given by any Depository Institution, in each case except as may be specifically authorized in the Loan Documents.

5.     Events of Default. Any one of the following shall constitute an "Event of Default" under this Assignment:

(a)     Any covenant or obligation of Owner under this Assignment is not fully and promptly performed, which is not cured within thirty (30) days after written notice thereof to Owner from Lender; provided, however, if such breach cannot by its nature be cured within thirty (30) days, and Owner has commenced such cure within such thirty (30) day period and, thereafter, diligently pursues the curing thereof (and then in all events cures such failure within ninety (90) days after the original notice thereof), Owner shall not be in default hereunder;

(b)     Any representations or warranties set forth in this Assignment prove to be incorrect or untrue as of the date thereof;

(c)     An Event of Default shall occur under any one or more of the Loan Agreement, the Note or any of the other Loan Documents; or

(d)     A default by Borrower occurs under any of the terms of any Account.

6.     Remedies. Upon the occurrence of an Event of Default hereunder, then in addition to Lender's remedies under the Loan Documents, or any remedy otherwise available to Lender at law or in equity, Lender may, at Lender's option, in Owner's name or Lender's name:

(a)     Sue in Owner's or Lender's name to enforce Owner's right and remedies under any Account;

(b)     Perform Owner's obligations under any Account on Owner's behalf;

(c)     Initiate and prosecute or appear in and defend (as appropriate under the circumstances) any action affecting any Account;

3

(d)    Modify, renew, supplement, extend, terminate, revoke, or accept the termination, cancellation, or revocation of any Account, or take any action to enforce any Account in accordance with its terms;

(e)    Exercise all Owner's rights and remedies under the terms of any Account;

(f)    Collect all amounts due from time to time to Owner under any Account; or

(g)    Without further demand or notice of any type and without first exercising any other right or remedy Lender may have against any other collateral, demand payment from any Account in an amount equal to all or any portion of the outstanding indebtedness secured by this Assignment (whether or not then due) including accrued interest and costs and expenses incurred.

All Lender's remedies under this Assignment are cumulative and in addition to and not exclusive of any other right or remedy available to Lender under the Loan Documents or otherwise available under applicable law, and may be pursued singly, successively, or together against Owner, Borrower, any guarantor, or any other collateral or security given to secure the Indebtedness secured by this Assignment, all at Lender's sole discretion. Any amounts due Owner under or in respect of any Account that Lender collects shall be applied as elected by Lender or in the manner and with the priority provided for in the Loan Documents, if so provided.

7.    Direction to Pay. This Assignment constitutes Owner's irrevocable direction to such Depository Institution to perform all its obligations under the Accounts for Lender and to pay all sums due to Owner under any Account directly to Lender upon Lender's written notice to such Depositary Institution that an Event of Default has occurred, without further proof of default, and Owner acknowledges and agrees that Depository Institution has no right or duty to inquire as to whether a Default or an Event of Default has occurred under this Assignment or the Loan Documents. Owner hereby irrevocably authorizes such Depository Institution to comply with the directions set forth in Lender's notice (without independently verifying the validity of the notice), and Owner acknowledges and agrees that such Depository Institution shall not be in default under any such Account if it complies with the directions in Lender's notice. Lender agrees not to exercise its rights under this paragraph 7 unless an Event of Default exists.

8.    No Cure. Neither Lender's performance of Owner's obligations nor Lender's enforcement of Owner's rights under any such Account shall constitute a cure of Owner's default, and, at Lender's option, Lender may take any other action or exercise any other remedy authorized under the other Loan Documents or any other obligation of Owner to Lender to enforce payment of the Loan or any other obligation of Borrower to Lender or to realize the benefit of any other collateral securing the Loan or any other obligations of Borrower to Lender.

9.    Attorney in Fact. Owner irrevocably appoints Lender as Owner's attorney-in-fact to enforce Owner's rights and remedies under the Accounts, to perform Owner's obligations under the Accounts on Owner's behalf, and to assign the Accounts either to Lender or another purchaser, as the case may be, in accordance with the terms of this Assignment if an Event of Default then exists. Owner acknowledges that this power is coupled with an interest and, as

4

such, cannot be revoked.

10.    Remedies.    Owner expressly acknowledges and agrees that the execution of this Assignment shall not constitute a waiver of, and shall not preclude the exercise of, any right, power or remedy granted to Lender in any document evidencing the indebtedness of Borrower to Lender, or as provided by law.  No previous modification, extension or compromise entered into with respect to any indebtedness of Borrower to Lender shall constitute a course of dealing or be inferred or construed as constituting an express or implied understanding to enter in any future modification, extension or compromise.  No delay on the part of Lender in exercising any right, power or remedy shall operate as a waiver thereof, or otherwise prejudice Lender's rights, powers or remedies.

11.    Notices.  Any notice or other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served, telecopied or sent by overnight courier or U.S. Mail and shall be deemed given: (a) if served in person, when served; (b) if telecopied, on the date of transmission if before 3:00 p.m. (Eastern time) on a business day; provided that a hard copy of such notice is also sent pursuant to clause (c) or clause (d) below; (c) if by overnight courier, on the first business day after delivery to the courier; or (d) if by U.S. Mail, certified or register mail, return receipt requested on the fourth (4th) day after deposit in the mail postage prepaid.

Notices to Owner:

Navy Yard Four Associates LLC
Attention:  Joseph S. Torg
15 Old Danbury Road, Suite 100
Wilton, Connecticut 06897
Telephone:  203-762-2828
Telecopy: 203-762-2854

With a copy to:

Trammel Crow Residential
Attention:  Sheryl A. Brown
6110 Executive Blvd., Suite 315
Rockville, Maryland 20852
Telephone: 301-881-4092
Telecopy: 301-881-4093

With a copy to:

LDA Parcel 4, LLC
Attention:  Martin Oliner
950 Third Avenue
New York, New York
Telephone:  [_____]
Telecopy: 212-319-8922

5

10/03/05 04:06 pm

With a copy to:

Michael K. Ording
Joes Day
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215
Telephone: 614-281-3839
Telecopy: 614-461-4198

Notices to Lender:

The Prudential Insurance Company of America
c/o The Prudential Real Estate Invests
8 Campus Drive, 4th Floor
Parsippany, New Jersey 07054
Attention: James P. Walker
Telephone: 973-683-1690
Telecopy: 973-683-1752

With a copy to:

The Prudential Insurance Company of America
c/o Prudential Real Estate Investors
8 Campus Drive, 4th Floor
Parsippany, New Jersey 07054
Attention: Ben Penaliggon
Telephone: 973-683-1763
Telecopy: 973-683-1795

with a copy to:

Goodwin | Procter LLP
Exchange Place
Boston, Massachusetts 02109
Attention: Minta E. Kay, Esq.
Telephone: 617-570-1877
Telecopy: 617-227-8591

Notices sent by counsel for any party shall be deemed to constitute notice from such party. Any party, by written notice to the other in the manner herein provided, may designate an address different from that set forth above. Notices given in any other fashion shall be deemed effective only upon receipt.

12.    Applicable Law. This assignment shall be construed and enforced in accordance with the laws of the State of New York without regard to the principles of conflicts of law.

13.    Waiver of Jury Trial. Owner and Lender hereby knowingly, voluntarily,

6

unconditionally, irrevocably and intentionally waive the right to a trial by jury in respect of any litigation based on, arising out of, under or in connection with this Assignment or any of the other Loan Documents or any course of conduct, course of dealings, statements (whether verbal or written) or actions of any person or any exercise by any party of their respective rights under this Assignment or the Loan Documents or in any way relating to the Indebtedness evidenced by the Loan Documents or the Property (including, without limitation, any action to rescind or cancel this Assignment and any claims or defenses asserting that this Assignment was fraudulently induced or is otherwise void or voidable); this waiver being a material inducement for Lender to accept this Assignment.

14.    Successors and Assigns.  Wherever used in this Assignment, the words **"Owner"** and **"Lender"** include their respective heirs, legal representatives, successors and assigns.

15.    Waiver of Rights.  Owner acknowledges and agrees that, upon the occurrence and continuance of an Event of Default hereunder, if Lender is exercising its rights under the Loan Documents, Owner shall have no right to withdraw funds or order the payment of funds from the Accounts, and Owner shall execute all documentation that may be reasonably requested by Lender from time to time to prohibit all parties (other than Lender) from access to the Accounts. Owner agrees that Owner shall not be entitled to, and Owner expressly waives, any right to use the funds deposited from time to time in the Accounts under Section 363 of the Federal Bankruptcy Code or any similar law, or otherwise, for any purpose other than as collateral for all the Indebtedness secured by this Assignment.

16.    Rights of Condominium Unit Purchasers.  To the extent, if at all, that any Account constitute deposits under purchase contracts for condominium units in the Property or interest thereon, (i) the security interest created by this Assignment will encumber only Owner's rights to such amounts, (ii) the rights of Lender under this Agreement (including rights to foreclose on, or direct application to the Indebtedness, of such amounts) are subject to the rights of the unit purchasers, and (iii) the rights of the unit purchasers in such amounts shall constitute a permitted encumbrance for purposes of this Assignment and the other Loan Documents and will be a permitted claim against such amounts, any other provision of this Assignment or the other Loan Documents notwithstanding.

[Remainder of page intentionally left blank]

073449.159058 DGM LIBD/1688408.3                                     10/03/05 04:06 pm

**IN WITNESS WHEREOF**, Owner has caused this Assignment to be executed under seal by its duly authorized representative as of _____, 2005.

NAVY YARD FOUR ASSOCIATES LLC, a Delaware limited
liability company

By:    Navy Yard Four Associates Limited Partnership, its sole member

        By:    TCR Navy Yard Four Limited Partnership, its general partner

                By:    TCR Northeast Condominiums, Inc. its general partner

                    By:   _____

                          Name:
                          Title:

8

**Schedule X**
**Depository Institutions**

(See Attached)

9

## Exhibit A

Legal Description

10

**Exhibit B**

## ACKNOWLEDGMENT AND CONSENT

The undersigned hereby acknowledges notice of, and consents to the terms and provisions of, the foregoing Assignment of Accounts (the "**Agreement**", the terms defined therein being used herein as therein defined) from Owner to Lender, and hereby confirms to the Lender that the description of the Account set forth on Schedule X attached hereto and incorporated herein is correct and that the undersigned has received no notice of any other pledge or assignment of the Account that remains in effect. Further, the undersigned hereby agrees with the Lender that:

(a)    Notwithstanding anything to the contrary in any other agreement relating to the Account, the Account is and will be subject to the terms and conditions of the Agreement.

(b)    The undersigned will, upon notice from Lender of the occurrence of an Event of Default under the Agreement, unless otherwise expressly provided in the Agreement, make all payments to be made by it in respect of the Account directly to the Lender at its offices at The Prudential Insurance Company of America c/o PAMG-RE Law Department, 8 Campus Drive, 4th Floor, Parsippany, New Jersey 07054-4493, Attention: James Walker, or otherwise in accordance with the instructions of the Lender.

(c)    All payments referred to in paragraph (b) above shall be made by the undersigned irrespective of, and without deduction for, any pledge, security interest, counterclaim, defense, recoupment or set-off and shall be final, and the undersigned will not seek to recover from the Lender for any reason any such payment once made. Notwithstanding the foregoing, by accepting this Acknowledgment and Consent Lender hereby agrees that the undersigned, prior to making payment to the Lender as herein provided, shall have the right to offset or deduct from the funds in the within account all sums, amounts and charges attributable solely to said Account (such as, but not limited to, service charges, uncleared funds, charges with respect to returned checks, and amounts required by law to be withheld); provided, however, that the foregoing right to offset or deduct shall not apply to any indebtedness of Owner to the undersigned based upon other accounts, notes, instruments, documents or other evidence of indebtedness of any kind, and provided, further that to the extent that the undersigned offsets or deducts any amounts from said account for uncleared funds, the undersigned shall forthwith upon clearance of such uncleared funds, pay over to Lender all such "cleared" funds. In addition, if after the undersigned has paid over the sums in said Account to Lender, regardless of whether it has made the offsets or deductions, as aforesaid, it incurs within one month thereafter any charges, expenses or liabilities with respect to said account (not due to, on

11

account of or resulting from fraud or forgery) for which it could have offset or made a deduction from said Account in accordance with the first sentence of this paragraph for acts or events which occurred, arose or existed prior to its paying over the sums in said account to Lender, Lender agrees, promptly upon receipt of notice thereof from the undersigned given within two months after the payment to Lender, together with backup or verification of same, to reimburse the undersigned for all such charges, expenses and liabilities so incurred by the undersigned, but in no event shall such reimbursement obligation exceed the amount from such Account originally paid over by the undersigned to Lender. The time limits in the foregoing sentence shall be extended two (2) additional months for charges, expenses and liabilities incurred with respect to said account due to, on account of or resulting from fraud or forgery.

(d)     The Lender shall be entitled to exercise any and all rights and remedies of Owner in respect of the Account in accordance with the terms of the Agreement, and the undersigned shall comply in all respects with such exercise.

This Acknowledgment and Consent shall be binding upon the undersigned and its successors and assigns, and shall inure to the benefit of the Lender and its successors, transferees and assigns. This Acknowledgment and Consent shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

IN WITNESS WHEREOF, the undersigned has duly executed this Acknowledgment and Consent as of the date set opposite its name below.

Dated:                                [NAME OF FINANCIAL INSTITUTION]

_____

_____
By:
Title:

12

## SCHEDULE 4.5

## ENCUMBRANCES

073449.159058  DGM  LIBD/1687331.11

10/07/05 11:35 am

Issued By:

| CHICAGO TITLE INSURANCE COMPANY | Schedule B |

OWNER'S POLICY OF TITLE INSURANCE
ALTA OWNER'S (10-17-92)

No: 2451-25246

This Policy does not insure against loss or damage (and the Company will not pay costs, legal fees, or expenses) which arise by reason of the following items, and the mortgage, if any referred to in Item 4 of Schedule A.

B    1.    Fiscal 2005 real estate taxes are exempt.

A0   2.    Survey entitled "ALTA/ACSM Land Title Survey in Boston, Massachusetts, Charlestown District, Suffolk County" by Gunther Engineering, Inc. dated August XX, 2005 reveals the following matters:

a.

E    3.    The exact acreage or square footage being other than as stated in the description sheet annexed or the plan(s) therein referred to.

F    4.    Terms and provisions of easements set forth in deed to Boston Redevelopment Authority dated July 7, 1978 recorded in Book 9182, Page 149.

G    5.    Covenants set forth in deed to Boston Redevelopment Authority dated May 21, 1978 recorded in Book 9182, Page 165.

Note: This policy affirmatively insures that the covenants have been fully performed or complied with.

I    6.    Yard easement reserved in deed to Bricklayers and Laborers Non-Profit Housing Company, Inc. dated December 21, 1987 recorded in Book 14358, Page 277.

T    7.    Covenants and restrictions contained in Quitclaim Deed dated May 26, 2005 recorded in Book 37165, Page 251.

U    8.    Land Disposition Agreement dated November 12, 2004 recorded in Book 37166, Page 1; as affected by First Amendment to Land Disposition Agreement dated March 21, 2005 recorded in Book 37166, Page 72; as affected by Second Amendment to Land Disposition Agreement dated ___ __, 2005 recorded in Book ___ __, Page ___.

AL   9.    Waterways License No. 10286 dated June 11, 2005 recorded in Book 37416, Page 306.

K         While specifically excluded from coverage under this policy, the following matter was recorded in Suffolk County Registry of Deeds:

a. Order of Conditions (DEP File No. 006-0962) dated March 16, 2003 recorded in Book 30912, Page 119, rerecorded in Book 31351, Page 250.

512B 9/96          DJB                                        DJB    09/29/05    17:12:54

## SCHEDULE 4.26

## ENVIRONMENTAL REPORTS

073449.159058  DGM  LIBD/1687331.11

Parcel 4 Documents as of September 22, 2005

Brown and Caldwell. (2003b). *Tier Classification and Numerical Ranking Scoresheet.* December 5, 2003

Brown and Caldwell. (2004a). *Draft Construction Release Abatement Measure Plan, Charlestown Navy Yard – Parcel 4, Charlestown, MA.* July 2004.

Brown and Caldwell. (2004b). *Construction Release Abatement Measure Plan, Charlestown Navy Yard – Parcel 4, Charlestown, MA.* November 8, 2004.

Brown and Caldwell. (2005a). *Construction Release Abatement Measure Status Report, Charlestown Navy Yard – Parcel 4, Charlestown, MA.* March 17, 2005.

*Brown and Caldwell. (2005b). *Pre-Characterization Assessment Letter Report, Parcel 4, Charlestown Navy Yard, RTN 3-22380.* April 11, 2005.

Brown and Caldwell. (2005c). *Supplemental Construction Release Abatement Measure Status Report, Charlestown Navy Yard – Parcel 4, Charlestown, MA.* April 29, 2005.

Brown and Caldwell. (2005d). *Updated Release Notification Form, RTN 3-22380.* April 29, 2005.

Brown and Caldwell. (2005e). *Tier II Transfer Submittal.* April 29, 2005.

Brown and Caldwell. (2005f). *Construction Release Abatement Measure Status Report #2, Charlestown Navy Yard – Parcel 4, Charlestown, MA.* September 15, 2005.

Brown and Caldwell. (2005 – multiple & ongoing). *Air Monitoring Data* (July 25, 2005; August 11, 2005; August 30, 2005; September 9, 2005; September 16, 2005; September 28, 2005).

Boston Redevelopment Authority and Brown and Caldwell. (2002). *Release Notification Form.* December 10, 2002.

Boston Redevelopment Authority and Brown and Caldwell. (2004a). *Draft Public Involvement Plan, Charlestown Navy Yard, DEP Release Tracking Number 3-22380, First Avenue, Charlestown, Massachusetts, 02129.* March 30, 2004.

Boston Redevelopment Authority and Brown and Caldwell. (2004b). *Response to Comments on Draft Public Involvement Plan, Charlestown Navy Yard, DEP Release Tracking Number 3-22380, First Avenue, Charlestown, Massachusetts, 02129.* June 8, 2004.

Boston Redevelopment Authority and Brown and Caldwell. (2004c). *Public Involvement Plan, Charlestown Navy Yard, DEP Release Tracking Number 3-22380, First Avenue, Charlestown, Massachusetts, 02129.* June 9, 2004.

Boston Redevelopment Authority and Brown and Caldwell. (2004d). *Response to Public Comments on the Draft Construction Release Abatement Plan, Charlestown Navy Yard – Parcel 4, Charlestown, MA.* November 8, 2004.

*Waterstone Environmental, Inc. and Brown and Caldwell. (2002). *Preliminary Environmental Site Assessment and Limited Subsurface Investigation Report, Subject Property Located Charlestown Navy Yard, Parcel 4, Charlestown, Massachusetts 02129.* August 9, 2002.

Waterstone Environmental, Inc. and Brown and Caldwell. (2003a). *Phase I Initial Site Investigation Report, Parcel 4 (RTN 3-22380), Former Charlestown Navy Yard, Charlestown, Massachusetts 02129.* August 11, 2003. Submitted to DEP December 5, 2003.

Waterstone Environmental, Inc. and Brown and Caldwell. (2003b). *Phase II Conceptual Scope of Work, Parcel 4 (RTN 3-22380), Former Charlestown Navy Yard, Charlestown, Massachusetts 02129.* August 11, 2003. Submitted to DEP December 5, 2003.

Documents marked with an asterisk (*) have been posted to the Parcel 4 website but were not submitted to the DEP.  Copies of correspondence (letters) can be found on the Parcel 4 website http://parcel4.bcportals.com/public/default.cfm

## SCHEDULE 5.17

### AFFILIATE TRANSACTIONS

None.

073449.159058 DGM LIBD/1687331.11                                        10/07/05 11:35 am